Ernest M. Schlereth, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

**John W. SIMPSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–502.**

Court of Appeals of Alaska.

Sept. 13, 1985.

## OPINION

COATS, Judge.

John W. Simpson was convicted, following a jury trial, of sexual abuse of a minor in violation of AS 11.41.440(a)(2). Judge Ralph E. Moody sentenced Simpson to five years with four years suspended and placed Simpson on probation for five years. Simpson appeals his conviction to this court. We reverse since we conclude that Simpson was indicted for a separate incident than the incident for which he was actually convicted.

On August 2, 1983, state troopers received a complaint alleging that Simpson had sexually abused an eleven-year-old girl, C.A. Following an investigation in which C.A., Simpson, and others were interviewed by state troopers, Simpson was arrested. On August 4, 1983, the state filed an infor-

mation alleging that "on *or about the 1st day of June, 1983,* ... John W. Simpson ... did knowingly engage in sexual contact with C.A., age eleven, by intentionally touching C.A.'s genitals." [Emphasis supplied.]

From the record it is clear that there were two distinct incidents where Simpson allegedly touched or attempted to touch C.A. sexually. It appears that C.A. was generally consistent as to the nature of these two incidents. According to C.A.'s trial testimony, on about June 1, 1983, she was at Simpson's house playing on a trampoline. She went inside to get something to drink and Simpson showed her some rocks he had found. Simpson began rubbing C.A.'s back and then put his hand in her pants and touched her vagina. C.A. told Simpson that she had to go home and ran home and told a fifteen-year-old friend what had happened. The incident was not reported to the police at that time.

According to C.A.'s trial testimony, on August 2, 1983, she was at Simpson's house using his trampoline. C.A. went in the house and Simpson told her to put on a pair of shorts. Simpson embraced C.A., kissed her, and put his hands in her pants. However this time he did not touch her vagina because C.A. moved away from him. Shortly after this incident the state troopers were notified.

C.A.'s testimony before the grand jury was less clear than her trial testimony. Clearly there were two distinct incidents. However, her Grand Jury testimony can be interpreted to the effect that Simpson touched her vaginal area in both incidents. The testimony of C.A. at the grand jury included this exchange:

Q. And did there come a time when he started touching you other places and trying to do other things with you besides just watch you change clothes?

A. Yes.

Q. Okay, what did he start out doing?

A. *Well, the very first time all he did was put his hands down my pants and touch my private place.*

Q. And let me show you on the doll—by private place, you mean this place down here?

A. Yes.

Q. That's where you go to the bathroom?

A. Yes.

Q. Okay, and I'm touching the genitals with the girl doll. And did he go down in the front of your pants and do that, or the back?

A. The back.

Q. And did he actually touch the skin down there?

A. Mmm-hmm. Yes.

Q. And when he did that, did he move his hand around?

A. Mmm-hmm, yes.

Q. *And how many times did Mr. Simpson touch you down there on your private parts?*

A. *Well, the first time he only did it—well, twice.*

Q. And both times the same way by going down the back of your pants?

A. Yes.

Q. *The second time he did it, did he ever try to kiss you too?*

A. Mmm-hmm; yes.

Q. Was this kissing basically on your mouth?

A. Uh-huh.

Q. *And the last time that he did it, did you decide that you needed to tell somebody?*

A. *Yes.*

Q. *And why did you decide that you needed to tell?*

A. *Well, we had been keeping it from our parents too long,* and so we just, you know, we said, well, we have to get this out in the open, you know, it's going too far, he might be doing it to other kids. Well, I knew he was doing it to [M.Ba.] but other kids that we didn't know about.

Q. And who is [M.Ba.]?

A. ... one of my friends.

Q. About your age?

A. She's eight.

Q. And you didn't know exactly what he was doing to [M.Ba.]?

A. No.

Q. Just something?

A. Mmm-hmm.

Q. And when you said "we decided we had to tell," who were you talking about?

A. [M.Br.] you see we're—well, I would always come to her when anything happened.

Q. Was she the first person you told?

A. Yes.

Q. And how old is [M.Br.]?

A. Sixteen.

Q. *And did you tell her the same day the last time it happened?*

A. *Yes.*

Q. *And did the Troopers come out that same day, to talk to you?*

A. *No.*

Q. *When did they come out?*

A. *Well, they came out the second time it had happened. We didn't tell anybody the first time.*

Q. *But after you told [M.Br.], did the Troopers come that same day?*

A. *Yeah.*

[Emphasis supplied.]

When the investigating trooper testified before the grand jury, he was asked by the prosecutor what date the initial complaint was reported to the troopers the first time, and he responded "8–2–83," whereupon the prosecutor interjected: "Excuse me, ladies and gentlemen, the Grand Jury indictment said the first day of June, we should probably make it the first day of August."

The indictment returned charged that *"on or about the 1st day of August, 1983,* ... John W. Simpson did knowingly engage in sexual contact with C.A., age eleven, by intentionally touching C.A.'s genitals."

It appears to us from the grand jury indictment that the grand jury indicted Simpson for the second incident. The state, in its pretrial memoranda, also appeared to understand that there were two incidents and that they had charged the second of the two incidents. When Simp-

son moved to exclude statements which he had made about the June 1 incident, the state replied as follows:

The defendant, John Simpson, was indicted on one count of sexual abuse of a minor pursuant to AS 11.41.440(a)(2). The sexual contact charged in the indictment allegedly occurred on or about August 1, 1983. The defendant was interviewed by Trooper Selden about events surrounding the August 1, 1983, incident and events surrounding *a previous incident* of sexual misconduct which occurred on or about June 2, 1983. [Emphasis supplied.]

The state went on to argue that evidence of an incident of prior sexual misconduct with the same victim was admissible. Several months later, in reply to a defense motion the state argued that by "charging on or about" August 1, the state could prevail by proving that the genital touching occurred during either of the two incidents. By the time of trial the state indicated that it would prove that the genital touching occurred on or about June 1 and that the August 1 incident was an attempted touching. This was the proof which the state presented at trial and Simpson was convicted based on the first incident which occurred on or about June 1.

■ We recognize that it is necessary in charging sexual abuse of a minor to allow leeway because children who are the victims of abuse may find it difficult to precisely recall the dates of offenses against them. In *Covington v. State,* 703 P.2d 436, 440–41 (Alaska App., 1985) we stated that "while we agree with the state's authorities that an indictment is sufficient which charges a specific incident, the precise date of which the witness is uncertain, the witness must nevertheless have a specific incident in mind. Sexual abuse of a minor is not a 'continuing offense.'" In the instant case, C.A. consistently testified to two distinct incidents which involved sexual abuse or attempted sexual abuse. This does not appear to us to be a case where C.A. could not distin-

guish the incidents or could not remember exactly what happened. Any confusion between the two incidents which occurred at the grand jury appears to us to be caused by the nature of the questioning of the witness rather than C.A.'s failure to recall the incidents. We see no reason to distinguish this from a case where the victim has been robbed by the same person in two distinct incidents and can distinctly recall both incidents. It appears from the grand jury transcript that Simpson was indicted based on the second incident which occurred on or about August 1, 1983. It is clear that the trial jury convicted Simpson based on the first incident which occurred on or about June 1, 1983. This appears to us to be a fatal variance. The state cannot indict on one incident and convict on another. Alaska Rule of Criminal Procedure 7(e) provides that "[t]he court may permit an indictment ... to be amended at any time before verdict or finding if *no additional or different offense* is charged and the substantial rights of the defendant are not prejudiced."

We believe that the record shows that Simpson was convicted of a different offense than the offense for which he was indicted. We conclude that this was an improper amendment of the indictment. We therefore conclude that this case must be reversed.[1]

REVERSED.

---

**1.** Simpson raises several other issues on appeal. Since we are reversing the case we find it unnecessary to read these other issues. However, in the event this case is retried, on the issue concerning whether to admit evidence that C.A. had made false accusations of sexual molestation, we refer the court to the discussion in *Covington v. State,* 703 P.2d 436, 441–42.