**STATE of Alaska, Petitioner,**

v.

**Kimberly PATTERSON, Respondent.**

No. S–1316.

Supreme Court of Alaska.

July 31, 1987.

Robert D. Bacon and David Mannheimer, Asst. Attys. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for petitioner.

Linda K. Wilson, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

We granted this petition for hearing to address the question of whether the statutory definition of the insanity defense in AS 12.47.010(a) encompasses both prongs or only the first prong of the traditional *M'Naghten* insanity defense.[1]

---

**1.** Under the rule derived from *M'Naghten's Case,* 8 Eng.Rep. 718 (H.L.1843), Patterson could be found not guilty by reason of insanity: (1) if she did not appreciate the quality and nature of her conduct, or (2) if she did not understand the wrongfulness of her conduct. *See Schade v. State,* 512 P.2d 907, 912 (Alaska 1973); *Chase v. State,* 369 P.2d 997, 998 n. 2 (Alaska 1962), *overruled in part, Fields v. State,* 487 P.2d 831, 836 (Alaska 1971).

## I. FACTS AND PROCEEDINGS.

Kimberly Patterson was charged with first-degree robbery for pointing a loaded gun at a man at the Anchorage International Airport and demanding money from him.[2] At trial, Patterson did not contest the state's proof that she committed these acts, but instead relied on the affirmative defense of insanity, arguing that she was not guilty by reason of insanity under AS 12.47.010(a)[3] because she was "unable, as a result of mental disease or defect, to appreciate the nature and quality of [her] conduct." The jury found Patterson "guilty but mentally ill" under AS 12.47.030(a).[4]

The superior court instructed the jury that in order to find Patterson not guilty by reason of insanity, it had to find that, because of a mental disease or defect, she did not understand that she was performing the physical acts which comprise the elements of the crime with which she was charged; that is, that she was threatening another person with a gun in an attempt to take his money. The jury apparently found that Patterson did not come within this interpretation of AS 12.47.010(a), and returned a verdict of "guilty but mentally ill" under AS 12.47.030(a).

On appeal Patterson argued, *inter alia,* that the Alaska Legislature's 1982 revisions of the statutory scheme relating to mental disease or defect as it affects criminal responsibility, AS 12.47.010–.130, violate her state and federal constitutional guarantees of due process, equal protection, and protection against cruel and unusual punishment. She believes that AS 12.47.010 permits her to be adjudged guilty in the absence of any conscious wrongdoing or criminal intent on her part. The court of appeals rejected this argument, noting that the insanity defense exists separate from, and in addition to, the defendant's right to produce psychiatric evidence to show diminished capacity under AS 12.47.020,[5] and holding that "[t]he defendant cannot be found guilty or guilty but mentally ill unless the state first proves all of the elements of the offense, including the *mens rea,* beyond a reasonable doubt." *Patterson v. State,* 708 P.2d 712, 714 (Alaska App.1985). The court of appeals did, however, reverse Patterson's conviction on the ground that one of the superior court's jury instructions merged the insanity defense with the element of *mens rea* required for a robbery conviction, making it impossible to determine whether the jury

2. The facts in this case are not in dispute and are more fully developed in *Patterson v. State,* 708 P.2d 712 (Alaska App.1985). We will reiterate only those facts relevant to the determination of the question presented here.

3. AS 12.47.010 provides in relevant part:
    *Insanity excluding responsibility.* (a) In a prosecution for a crime, it is an affirmative defense that when the defendant engaged in the criminal conduct, the defendant was *unable,* as a result of a mental disease or defect, *to appreciate the nature and quality of that conduct.*
    [Emphasis in text of statute added.]

4. AS 12.47.030 provides in relevant part:
    *Guilty but mentally ill.* (a) A defendant is guilty but mentally ill if, when the defendant engaged in the criminal conduct, the defendant *lacked,* as a result of a mental disease or defect, *the substantial capacity either to appreciate the wrongfulness of that conduct or to conform that conduct to the requirements of law.* A defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct and is subject to the provisions of AS 12.47.050.

[Emphasis in text of statute added.] AS 12.47.050 in part directs the Department of Corrections to provide mandatory mental health treatment to a defendant found guilty but mentally ill.

5. AS 12.47.020 provides in part:
    *Mental disease or defect negating culpable mental state.* (a) Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a culpable mental state which is an element of the crime. However, evidence of mental disease or defect that tends to negate a culpable mental state is not admissible unless the defendant ... files a written notice of intent to rely on that defense.
    (b) When the trier of fact finds that all other elements of the crime have been proved but, as a result of mental disease or defect, there is a reasonable doubt as to the existence of a culpable mental state that is an element of the crime, it shall enter a verdict of not guilty by reason of insanity.

actually found that Patterson acted with the requisite *mens rea.* *Id.* at 714-15.

The court of appeals then went on to rule that the superior court in its jury instructions had interpreted AS 12.47.010(a) too narrowly. *Id.* at 715-17. The superior court read AS 12.47.010(a) to incorporate only the first prong of the traditional *M'Naghten* insanity test, that the defendant did not understand the basic nature and quality of his or her conduct. *Id.* at 716. This reading of the statute thus excluded the second prong of the *M'Naghten* test, which allows the defendant to be found not guilty by reason of insanity if the defendant did not understand that the conduct was wrong.[6] The court of appeals held that the correct interpretation of AS 12.47.-010(a) included both prongs of the *M'Naghten* test—that defendant could be found not guilty by reason of insanity either if the defendant was not aware of the physical acts he or she was performing, or if he or she did not understand the wrongfulness of those acts. *Id.* at 717 & n. 3.

We subsequently granted the state's petition for hearing from this ruling of the court of appeals concerning the insanity test.

## II. DOES THE STATUTORY DEFINITION OF THE INSANITY DEFENSE IN AS 12.47.010(a) INCORPORATE BOTH PRONGS OR ONLY THE FIRST PRONG OF THE M'NAGHTEN TEST?[7]

The state argues that the court of appeals' ruling that AS 12.47.010(a) encompasses both prongs of the *M'Naghten* test cannot be reconciled with the statute's unambiguous legislative history. It maintains that the court erroneously invoked the canon of construction that a re-enacted statute is presumed to incorporate the judicial interpretation which preceded its re-enactment, because the legislature's expressed intent conflicts with such prior judicial interpretation. The state contends that the position taken by this court in *Chase,* that the two prongs of the *M'Naghten* test are indistinguishable, was rejected by the legislature, and, specifically, that the House Judiciary Committee report expressly disavowing the second prong of *M'Naghten*[8] deserves particular

6. *See supra* note 1.

7. This question is one of general statutory interpretation, which this court has special competency to resolve. *State v. Dupere,* 709 P.2d 493, 495 (Alaska 1985), *modified on other grounds,* 721 P.2d 638 (Alaska 1986). We are free to substitute our judgment for that of the trial court in reviewing issues of statutory interpretation. *See Norton v. Alcoholic Beverage Control Bd.,* 695 P.2d 1090, 1092 (Alaska 1985); *State, Commercial Fisheries Entry Comm'n v. Templeton,* 598 P.2d 77, 81 (Alaska 1979).

8. The court of appeals quoted the following excerpt from the House Judiciary Committee report relevant to AS 12.47.010(a):

> An example of a person who could successfully establish the elements of the revised insanity defense is the defendant who, as a result of a mental disease or defect, is unable to realize that he is shooting someone with a gun when he pulls the trigger on what he believes to be a water pistol, or a murder defendant who believes he is attacking the ghost of his mother rather than a living human being. Conversely, this defense would *not* apply to a defendant who contends that he was instructed to kill by a hallucination, since the defendant would still realize the nature

and quality of his act, even though he thought it might be justified by a supernatural being. Such a defendant could be determined guilty but mentally ill under AS 12.47.030.

3 House Journal, Supplement No. 64 at 8 (1982) (emphasis in original) [hereinafter "House Supp. No. 64"], *quoted in Patterson,* 708 P.2d 716-17. (The commentary was originally published in House Supplement No. 63; the corrected version, published in House Supplement No. 64, contains no relevant changes.)

> However, the court of appeals omitted to acknowledge the immediately preceding paragraph of the same commentary:

> By limiting the [revised insanity] defense to cases where the defendant is unable to appreciate the nature and quality of his conduct, *this legislation enacts one branch of the M'Naghten test of insanity. That portion of the M'Naghten test which defines legal insanity as including situations where the defendant did not know the wrongfulness of his conduct is specifically rejected by this legislation and excluded from the revised definition of legal insanity.* The fact that the defendant did not appreciate the wrongfulness of his conduct, nevertheless, may be relied upon to establish that the defendant was "guilty but mentally ill" under AS 12.47.030.

*Id.* at 7-8 (emphasis added).

interpretive weight since the House voted to adopt it as the official commentary on the bill and the Senate voted to publish it.[9] The state also points out that, prior to reporting the bill and commentary to the full House, the House Judiciary Committee directed written questions concerning the bill's intended effect to the executive branch, and received a response from the Department of Law which reaffirmed the executive's intent in proposing the bill to enact only the first *M'Naghten* prong.[10] We think the state's arguments are persuasive and thus disapprove of the court of appeals' construction of AS 12.47.010(a).

The House Judiciary Committee report without doubt supports the state's position that the legislature intended to adopt only the first prong of *M'Naghten*. *See supra* note 8. The state's second contention, that the legislature in re-enacting the insanity defense should not be presumed to have endorsed the judicial gloss of *Chase* gains credence from the report's avowed intent that the bill should work a significant change in the law by restricting the types of mental diseases or defects to which the insanity defense will apply.[11] In addition, the executive branch, which proposed the statutory revision which led to the enactment of AS 12.47.010(a), formally indicated its view that the principal problem at which

the change was aimed is that "the definition of insanity has been overly broadened." Department of Law Letter at 1. It was also noted that "a defendant's subjective appreciation that what he is doing is wrong ... is only in rare instances required by the criminal law," and that

> [t]he proposed bill draws the line in the same way for the insanity defense. A person may claim that he did not understand that he was committing the acts that constituted the crimes. He may not claim, however, that his mental illness caused him not to appreciate the wrongfulness of his conduct.

*Id.* at 2. We consider the foregoing to contradict the view expressed in *Chase* that the ability to know the nature and quality of an act is indistinguishable from the ability to understand its wrongfulness, *see Chase*, 369 P.2d at 1002–03, and thereby to substantiate the state's argument that the legislature in enacting AS 12.47.010(a) intended to reject *Chase*.

A final argument suggested by the state which militates against Patterson's position is that construing AS 12.47.010(a) to include the second *M'Naghten* prong would cause it in large part to duplicate AS 12.47.-030(a), which provides that a "guilty but mentally ill" verdict should be rendered if a

---

9. *See* 3 House Journal 2317–18 (1982) (voting to adopt commentary); 2 Senate Journal 1720 (1982) (voting to include reference to commentary in the journal).

10. This letter sent by the Attorney General to the chairperson of the House Judiciary Committee stated in part:

> The bill has abolished the concept of attempting to reconstruct whether a defendant appreciated that his actions were wrong; it has done this by using only the first part of the M'Naghten test as the legal standard. The idea behind this omission is to preserve the original intent of the M'Naghten formulation—that the defense of insanity is restricted to those persons who, because of extreme mental illness, *completely lack the capacity* to evaluate *any* of their actions in terms of moral right or moral wrong.

Letter from Wilson L. Condon (by Daniel W. Hickey, Chief Prosecutor, Department of Law Criminal Division) to Ramona Barnes (May 17, 1982) at 2 (emphasis in original) [hereinafter "Department of Law Letter"]. *See also id.* at 12 (In adopting the proposed bill, Alaska "would be

the only state to keep the insanity defense but narrow it, restricting its application to the first half of the M'Naghten Rule....").

11. *See* House Supp. No. 64 at 6. The state makes another persuasive, common-sense argument that the court of appeals erred in its unwillingness to acknowledge the express legislative intent to adopt a policy different from that laid down in *Chase:*

> It is one thing to recognize that, when the Legislature prohibits something called "burglary" or "theft," it legislates against a common-law background which extends back for centuries and encompasses thousands of cases. It is quite another thing to hold, as the court of appeals has done here, that a comprehensive revision and codification of an area of the law is constrained, apparently forever, by a single common-law policy decision made without benefit of adversary briefing.

(This court acknowledged in *Chase* that the question presented therein regarding a jury instruction defining "insanity" was not included in the points on appeal in that case. *See* 369 P.2d at 1002.)

defendant lacks the "substantial capacity" to appreciate the wrongfulness of his or her conduct. Thus, if Patterson's position were accepted, a defendant unable to appreciate the wrongfulness of his or her conduct might either be acquitted under section .010(a), or convicted, subject to mandatory treatment provisions, under section .030(a). In light of the principle that "[w]here a reasonable construction of a statute can be adopted which realizes the legislative intent and avoids conflict or inconsistency with another statute this should be done," *Gordon v. Burgess Constr. Co.*, 425 P.2d 602, 604 (Alaska 1967) (footnote omitted), AS 12.47.010(a) should be construed to exclude the second *M'Naghten* prong, which the legislature elected to make part of the present "guilty but mentally ill" provision rather than to retain as part of the statutory definition of insanity. If the legislature had intended AS 12.47.010(a) to encompass a defendant's capacity to appreciate the wrongfulness of his or her conduct, it would have had little reason to enact that language in the AS 12.47.030(a) definition of "guilty but mentally ill."

Patterson offers no contrary authority to support her general endorsement of the court of appeals' reasoning, or to substantiate her position that this court should not adhere to the expressions of legislative intent ascertainable from the House committee's report and the Department of Law Letter. This court in the past has approved the view that the intent of the legislature as revealed by the report of the standing committee which investigated the desirability of the statute under consideration is highly persuasive evidence of the meaning of the statute.[12] Furthermore, extrinsic aids to statutory construction such as committee reports arguably need not be invoked to resolve this case since the words of AS 12.47.010(a) clearly embody the first *M'Naghten* prong alone, and resort to such aids presupposes ambiguity in the statute itself.[13]

We also find that Patterson's specific rebuttal arguments lack merit. First, she argues that the state's reliance on the Department of Law Letter is misplaced, based on statements in the letter that "the bill intentionally uses the terms of art found in the M'Naghten test ... [in order] to effectuate the goals of the bill, and to insure against any tendency to broaden the test for insanity." *See* Department of Law Letter at 3. Patterson asserts that the key "terms of art" of *M'Naghten* are that the defendant "know" the nature and quality of his "acts," and concludes that because the legislature replaced them with "appreciate" and "conduct," respectively, it therefore intended to broaden the test originally proposed by the Department of Law.

This argument is unsupportable because the letter does not specify what is meant by "the terms of art found in the *M'Naghten* test," and because the bill substantially does adopt the first prong of the *M'Naghten* formulation. Even if Patterson were correct that "know" and "acts" are the key terms, there is no indication that the substitution of "appreciate" and "conduct" was intended to have a broadening effect. On

---

**12.** *See Roderick v. Sullivan*, 528 P.2d 450, 454 (Alaska 1974); *e.g.*, *Wien Air Alaska v. Arant*, 592 P.2d 352, 360 & n. 32 (Alaska 1979) (citing congressional committee report as indicating purpose of federal legislation); *Starr v. Hagglund*, 374 P.2d 316, 319 (Alaska 1962) (committee reports to constitutional convention may be relied on in constitutional interpretation); *cf. Miller v. Federal Mine Safety & Health Review Comm'n*, 687 F.2d 194, 195 (7th Cir.1982) (absent contrary legislative history, a clear statement in the principal committee report is powerful evidence of legislative purpose and may be given effect even if it is imperfectly expressed in statutory language); *see generally* 2A C. Sands, Sutherland Statutory Construction [hereinafter *"Sutherland"*] § 48.06 (rev. 4th ed. 1984).

**13.** *See Miller v. Monrean*, 507 P.2d 771, 776 & n. 13 (Alaska 1973) ("Any *ambiguity* in the language ... is clarified by the report of the House Judiciary Committee pertaining to the ... amendment setting forth the present provisions. Reports of legislative committees may be regarded as an exposition of the legislative intent *where otherwise* the meaning of a statute is obscure.") (emphasis added and footnote integrated). Given the general principle of *expressio unius est exclusio alterius*, *see Sutherland* § 47.23, unless the terms of AS 12.47.010(a) are considered ambiguous, inclusion of the second *M'Naghten* prong certainly should not be inferred.

the contrary, the House committee's report, as previously noted, states that the statutory revision was intended to make significant changes in Alaska's laws pertaining to insanity, one of which was to "*restrict* [] the types of mental diseases or defects that will provide a complete defense to criminal liability." [14] Since no material amendments to the bill were even proposed subsequent to the issuance of the Department of Law Letter,[15] the substituted terms must have been incorporated in the bill prior to receipt of the letter. It thus seems reasonable to presume that the letter reflects the legislature's understanding of the statute it passed.[16]

Second, Patterson attempts to reconcile "the incongruity of the plain meaning of the statutory terminology ultimately chosen by the legislature with the seemingly inconsistent expressions of legislative intent in the commentary and committee report" by suggesting that these legislative materials "refer to the Department of Law's use of the exact terms of the *M'Naghten* test 'know' and 'act' and not the ultimate terms of the statute 'appreciate' and 'conduct'." However, the fact that the House voted to adopt the committee report as the official commentary on June 2, 1982, subsequent to the Department's letter and when the bill was already in its final form,[17] negates Patterson's contention that the commentary does not reflect the legislature's intent with respect to the language as enacted. Confirming this point is the letter transmitting the report from the Judiciary Committee to the Speaker of the House, which described the report as "a commentary and sectional analysis of the bill as it passed from the House Judiciary Committee on May 29, 1982 ... [which] should be helpful in identifying the provision of the bill and *clarifying the intent of each section*." 3 House Journal, Supplement No. 63 at 1 (1982) (emphasis added); *cf. Hafling v. Inlandboatmen's Union*, 585 P.2d 870, 874 (Alaska 1978) (letter of intent accompanying bill to amend statute considered indicative of amendment's meaning).

In summation, the foregoing leads us to hold that AS 12.47.010(a) enacts only the first prong of the *M'Naghten* test.[18]

REVERSED and REMANDED to the court of appeals with directions to remand to the superior court for a new trial in accordance with the foregoing and with part I of the opinion of the court of appeals.

---

**14.** House Supp. No. 64 at 6 (emphasis added). *See also* Department of Law Letter at 8 ("The new bill tightens the insanity defense substantially.").

**15.** *See* 3 House Journal 2317–18 (1982); 1981–1982 Senate Bill History 814.

**16.** *Cf. State, Div. of Agric. v. Fowler,* 611 P.2d 58, 60 (Alaska 1980) (letter of transmission from governor to committee considered relevant in interpreting statute). *See generally Sutherland* § 48.05, at 306 (courts have referred to messages of the executive to determine legislative intent in construing ambiguous statutes).

**17.** *See* 3 House Journal 2317–18 (1982); 1981–1982 Senate Bill History 814.

**18.** Respondent Patterson also argues that construing AS 12.47.010(a) to encompass only the first prong of *M'Naghten* renders the statute unconstitutional, and that the definition of "guilty but mentally ill" provided by AS 12.47.-030(a) is likewise unconstitutional. We decline to address the issue of the constitutionality of the omission of the second prong of *M'Naghten* from AS 12.47.010(a). In our view it will not become ripe for judicial review unless the jury again finds Patterson guilty but mentally ill after her new trial. *Cf.* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532.2, at 137 (1984) ("Ripeness doctrine reflects the determination that courts should decide only 'a real, substantial controversy,' not a mere hypothetical question."). We consider it appropriate to pass only on the constitutionality of a statute that is essential to the determination of the case presented. *See Perry v. State,* 429 P.2d 249, 252 (Alaska 1967).