**Steven A. MICHAEL, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2041.

Court of Appeals of Alaska.

Dec. 23, 1988.

Michael Jungreis, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and CARLSON, Superior Court Judge.*

OPINION

COATS, Judge.

Loreli and Steven Michael were each indicted on thirteen counts of assault in the first degree. AS 11.41.200(a)(3). Each count of the indictment charged that Loreli and Steven Michael had assaulted their daughter D.M. Each count of the indictment represented a bone that had been broken in the body of their daughter. Each count of the indictment read:

> That on or about November 5, 1985, through January 5, 1986, at or near Anchorage, in the Third Judicial District, State of Alaska, LORELI L. MICHAEL and STEVEN A. MICHAEL, either personally or as a person who is legally accountable for the conduct of another, did unlawfully and intentionally [i.e., knowingly] perform an act that resulted in serious physical injury to D.M. under circumstances manifesting extreme indifference to the value of human life, by fracturing the [name of the bone].

Loreli and Steven Michael were tried jointly in October, 1986. Acting Superior Court Judge Alexander O. Bryner presided over the court trial. Judge Bryner found Loreli Michael guilty of three counts of first-degree assault. He concluded that Loreli Michael had personally inflicted D.M.'s injuries. He sentenced her to ten years with three years suspended on each count, placing her on probation for five years following her release from confinement. Judge Bryner imposed these sen-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

tences concurrently. Judge Bryner found that Steven Michael had not personally inflicted the injuries on his daughter and had not acted as an accomplice to the infliction of D.M.'s injuries. However, Judge Bryner found that Steven Michael had caused harm to his daughter by failing to prevent his wife from injuring D.M. and by failing to obtain medical aid. He found Steven Michael guilty of two counts of second-degree assault, a lesser-included offense. Judge Bryner sentenced Steven Michael to four years imprisonment with two years suspended, placing Michael on probation for five years following his release from confinement. Judge Bryner imposed these two sentences concurrently. Steven Michael now appeals, arguing that (1) he could not properly be convicted of assault on the theory that he did not act to prevent his daughter's injuries; (2) that there was no evidence showing that he was aware of the seriousness of his daughter's injuries; (3) that there was a fatal variance between the indictment and the crime for which he was convicted; and (4) that there was insufficient evidence presented at trial to show that he knew that his daughter was in need of aid. We affirm the convictions. In this opinion we deal only with Steven Michael's conviction.

D.M. was born on November 5, 1985, to Loreli and Steven Michael. On January 5, 1986, the Michaels brought D.M. into the emergency room at the Elmendorf Air Force Base hospital because her leg was red and swollen. Dr. Carole Buchholz examined her and ordered x-rays.

Upon examining the x-rays, Dr. Buchholz saw "obvious fractures of all four bones in the lower legs," two bones in each leg. Dr. Buchholz ordered additional x-rays, which showed many more broken bones: both femurs (upper legs), the upper and lower bones of both arms, and at least nine ribs. Dr. Steven Diehl, a radiologist, was brought in to review the x-rays. Dr. Diehl concluded that D.M. had suffered multiple fractures and that her bones were in different stages of recovery.

Drs. Buchholz and Diehl testified that a baby's bones heal quite rapidly if broken.

The doctors were able, therefore, to determine the approximate date that each of the fractures was inflicted. Some of the fractures were very recent; others were several weeks old. The left tibia (lower leg) had been fractured twice, at two different times. The rib fractures had been inflicted at different times. Several other bones had been fractured more than once. The nature and number of the fractures and the amount of force required to inflict them excluded accidental causes. D.M. also had a bruise on the back of her left shoulder, and two burns on her left forearm. She also had broken blood vessels on her face and neck.

Loreli Michael had been the baby's primary caretaker. She stayed home with the baby during the day. Steven Michael, who was in the Army, was out of town on field maneuvers for about two weeks beginning December 5. He returned home sometime between December 14 and 20. From his return until January 5, he would on some days spend long hours on duty, but on other days would spend a substantial amount of time at home. Although Loreli Michael did most of the caretaking—diaper changing and the like—when he was home, Steven Michael occasionally performed these duties.

Loreli Michael told Sandra Csaszar, the Division of Family and Youth Services social worker who investigated the case, that D.M. had always been in the presence of one or the other parent from the time she left the hospital after her birth until January 5. She had never been left with a babysitter.

Based upon the foregoing, and other evidence, Judge Bryner concluded that Loreli Michael was guilty of three counts of assault in the first degree. He concluded that Loreli Michael had directly assaulted D.M., personally causing D.M.'s injuries.

At trial, the state presented three theories of criminal liability for Steven Michael: (1) that Michael personally inflicted the injuries; (2) that Michael aided or abetted his wife with the intent to promote or facilitate the offense; and (3) that Michael had breached his legal duty to aid and assist his

child because he did not aid his daughter when he knew that she was physically mistreated and abused by his wife. Judge Bryner acquitted Michael on the first two theories. Judge Bryner, however, found Michael guilty on the state's third theory:

Mr. Michael had a legal duty to aid and assist his child if she was under the threat or risk of physical damage or assault—from any person, including his wife. I find that that duty existed both under Alaska statutes as well as under common law. Second, I find that Mr. Michael did not aid and did not help his daughter when she was in fact physically mistreated and abused by his wife. Third, I find that Mr. Michael's failure to act was knowing. In other words, I find that Mr. Michael was capable of rescuing and assisting his daughter. And I find that he knew that he was capable and— could have rescued her. I find specifically that he was aware of a substantial probability that his daughter was being mistreated, or physically abused by his wife. And that he failed to act in the face of ... that awareness. As a result, I further find that as a result of his failure to act, that his daughter suffered serious physical injury.

....

Mr. Michael was aware, after December 20th, ... of [a] substantial probability that his daughter was ... under a risk of physical attack and assault from his wife of some sort. Knowing that risk[,] I find that the failure to render assistance under those circumstances constitutes a gross departure [or] deviation from the standard of conduct that would be expected of ... ordinary people in the normal everyday conduct of their affairs under similar circumstances. And for that reason I do find that Mr. Michael, in failing to take any action on behalf of his ... daughter, acted recklessly.

■ Stephen Michael argues that he could not properly be convicted for assault

for failing to act to protect his child. The question which he raises is a question of statutory interpretation. This court does not defer to the trial court on questions of statutory interpretation, but determines them *de novo*. *State v. Patterson*, 740 P.2d 944, 946 n. 7 (Alaska 1987). Neither the Alaska Supreme Court nor this court has previously decided this question; this is a case of first impression in this jurisdiction..

■ Steven Michael was convicted of assault in the second degree, AS 11.41.-210(a)(2). The statute provides:

*Assault in the second degree.* (a) A person commits the crime of assault in the second degree if

....

(2) that person recklessly *causes* serious physical injury to another person. AS 11.41.210(a)(2) (emphasis added).

In essence, the question before this court is whether Michael can properly be said to have caused D.M.'s injuries if he recklessly failed to act to protect her. The statute does not define when a person can be said to have caused an injury to another. Where a statute does not define a term, we first turn to the dictionary as a source to determine what the legislature intended in using a word. Webster's New Collegiate Dictionary defines "cause" as "a: something that brings about an effect or a result b: a person or thing that is the occasion of an action or state, *esp.* an agent that brings something about c: a reason for an action or condition." Certainly a result of Steven Michael's failure to intervene to prevent the injuries was that D.M. received further injuries. Therefore, the plain wording of the statute can be read to include Steven Michael's conduct.

We next turn to the common law and to decisions of other state courts to determine how other courts have resolved similar problems.[1] In general, under the common

---

1. *See Olp v. State,* 738 P.2d 1117 (Alaska App. 1987). In *Olp* we were asked to determine whether a stepparent could be convicted for nonsupport of his stepchild under AS 11.51.120. That statute provided that a person was guilty of a failure to provide support if he was "legally charged with the support of a child under 18 years of age." In deciding this question, we looked at the plain wording of the statute. *Id.* at 1119. We also looked at the common law to

law a person did not face criminal liability for the failure to aid another person. However, the common law created a clear exception to this general rule where there was a parent-child relationship. A parent had a clear duty to aid his child.[2]

Although there does not seem to be extensive case law directly on point in this area of the law, the case law that is available appears to be unanimous in establishing the duty of a parent to act to protect his child. *See State v. Walden*, 293 S.E.2d 780 (N.C.1982) (mother convicted of assault with a dangerous weapon for failure to take reasonable steps to protect her one year old son from an assault); *Palmer v. State*, 164 A.2d 467 (Md.1960) (mother convicted of involuntary manslaughter for criminal negligence where her paramour beat her child and the beatings resulted in the child's death); *People v. Burden*, 72 Cal.App.3d 603, 140 Cal.Rptr. 282 (1977) (father convicted of second-degree murder for failure to feed his child where child died of malnutrition and dehydration); *State v. Williquette*, 385 N.W.2d 145 (Wis.1986) (mother convicted of child abuse for leaving her two children with her husband who abused the children); *State v. Zobel*, 81 S.D. 260, 134 N.W.2d 101 (parents convicted of murder for neglect of children which resulted in death), *cert. denied*, 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76 (1965). Furthermore, other Alaska statutes establish a duty for a parent to care for a child. AS 11.51.120(a) provides misdemeanor criminal penalties where "a person legally charged with the support of a child under 18 years of age ... fails without lawful excuse to provide support for the child." AS 11.51.-120(b) defines support to include "necessary food, care, clothing, shelter, medical attention, and education." *See also* AS 11.51.100.[3]

We conclude that Steven Michael could properly be convicted of assault in the second degree under AS 11.41.210. In interpreting AS 11.41.210, the critical question before us is whether Steven Michael's failure to take reasonable actions to protect his child from serious physical injury by Loreli Michael can be said to have caused D.M.'s injuries. Although generally a person has no duty to act to protect another, we find that the common law and Alaska

interpret the statute. We concluded that, under the common law, a stepparent was not legally charged with the support of his stepchildren. *Id.* at 1118. We ultimately concluded that AS 11.51.120 could not be interpreted to prosecute a stepparent for nonsupport of his stepchild.

2. According to 1 W. LaFave and A. Scott, *Substantive Criminal Law* § 3.3 at 284–85 (1986) (footnotes omitted):

Generally one has no legal duty to aid another person in peril, even when that aid can be rendered without danger or inconvenience to himself. He need not shout a warning to a blind man headed for a precipice or to an absent-minded one walking into a gunpowder room with a lighted candle in hand. He need not pull a neighbor's baby out of a pool of water or rescue an unconscious person stretched across the railroad tracks, though the baby is drowning or the whistle of an approaching train is heard in the distance. A doctor is not legally bound to answer a desperate call from the frantic parents of a sick child, at least if it is not one of his regular patients. A moral duty to take affirmative action is not enough to impose a legal duty to do so. But there are situations which do give rise to a duty to act:

(1) Duty Based Upon Relationship. The common law imposes affirmative duties upon persons standing in certain personal relationships to other persons—upon parents to aid their small children, upon husbands to aid their wives, upon ship captains to aid their crews, upon masters to aid their servants. Thus a parent may be guilty of criminal homicide for failure to call a doctor for his sick child, a mother for failure to prevent the fatal beating of her baby by her lover, a husband for failure to aid his imperiled wife, a ship captain for failure to pick up a seaman or passenger fallen overboard, and an employer for failure to aid his endangered employee. Action may be required to thwart the threatened perils of nature (e.g., to combat sickness, to ward off starvation or the elements); or it may be required to protect against threatened acts by third persons.

*See also* R. Perkins and R. Boyce, *Criminal Law* at 658–64 (3d ed. 1982).

3. AS.11.51.100 provides:

*Endangering the welfare of a minor.* (a) A person commits the crime of endangering the welfare of a minor if, being a parent, guardian, or other person legally charged with the care of a child under 10 years of age, the person intentionally deserts the child in any place under circumstances creating a substantial risk of physical injury to the child.

statutes establish a clear duty upon a parent to protect his child. It seems clear under the law that where the parent fails to carry out this duty and the child is injured as a result, the parent has caused the child's injuries and may be held criminally liable.[4]

■ Michael argues that if AS 11.41.210 is interpreted to impose criminal liability where he failed to act to protect his child, the statute does not give adequate notice of what conduct is prohibited. He argues that the statute is unconstitutionally vague.

In *Summers v. Anchorage*, 589 P.2d 863, 866–67 (Alaska 1979), the supreme court set out three factors which must be considered in determining whether a statute is unconstitutionally vague. The court stated:

> First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise of first amendment rights. The second consideration is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited. The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of its prohibitions.

*Id.* (footnotes omitted).

Michael does not argue that an interpretation of AS 11.41.210 holding a parent criminally liable for failing to protect his child from injury affects first amendment rights or encourages arbitrary enforcement. Rather, he contends that such an interpretation of the statute does not give adequate notice of the conduct that is prohibited. However, as we indicated previously in this opinion, a parent's duty to protect a child is clearly established both in case law and by Alaska statute. Michael argues that the statute is vague because it does not give a parent notice as to when a failure to intervene might lead to criminal liability. Michael gives as an example a case where a parent allows a child to take up sky diving. Even though in some cases the nature of the parent's duty to protect a child may be ambiguous, a parent whose conduct clearly falls within the statute cannot complain. In *Summers,* the court said:

> This conduct falls squarely and clearly within the "core" of the ordinance's prohibitions. Appellants have advanced many hypothetical situations to this court in an attempt to raise the specter of citizens unknowingly engaging in behavior which might arguably be prohibited by the ordinance's terms. It is sufficient to note that "even if the outermost boundaries of [the challenged statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."

*Id.* at 868 (footnotes omitted; bracketed materials in original). *See also Stock v. State,* 526 P.2d 3, 11–12 (Alaska 1974).

Reasonable people may differ about the outer boundaries of a parent's duty to protect his or her child from harm, and about

---

4. Michael argues that by interpreting AS 11.41.-210(a)(2) in this way we would be creating a common law crime in violation of AS 11.81.220. However, we often rely on the common law as an aid in interpreting a statute. *See Olp v. State,* 738 P.2d 1117, 1118 (Alaska App.1987). That is what we have done here. Michael cites several sections of the criminal code, arguing that the legislature did not intend to provide criminal liability for a failure to act. We find the legislative rearrangement of the Model Penal Code to be insignificant. *See Neitzel v. State,* 655 P.2d 325, 327 (Alaska App.1982) (legislative rearrangement of Model Penal Code clauses does not give rise to an inference that legislature intended a substantial change).

There is no indication of a legislative intent to change the duty of a parent to act to protect his child; rather the legislative intent seems to require a parent to protect his child. AS 11.81.-600(a) provides: "[t]he minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing." AS 11.81.-900(b)(36) defines an omission as "a failure to perform an act for which a duty of performance is imposed by law." *Cf.* Model Penal Code § 2.02(3), 2.06(3)(a)(iii) (permitting the prosecution for an omission where there is a duty to act). AS 11.51.120(a) and .120(b), AS 11.51.100, and the common law establish this duty to act.

the appropriateness of using the criminal law to enforce that duty at or near the outer boundaries. *See State v. Jones,* 750 P.2d 828, 832–33 (Alaska App.1988); *id.* at 833–34 (Coats, J., concurring). However, the duty of a parent to protect a child from severe abuse such as occurred in this case is crystal clear. We conclude that the statute is not vague as applied to this case.

▪▪▪ Michael next argues that if we interpret AS 11.41.210(a)(2) to provide for criminal liability where a parent has failed to protect his child from an assault by another person, that statute would be unconstitutional because it would fail to require sufficient criminal intent for conviction. A person commits assault in the second degree when he "recklessly causes serious physical injury to another person." AS 11.41.210(a)(2). In convicting Michael under this statute, Judge Bryner found that Michael knew of the need to take action to protect his daughter and that as a result of his failing to take action he acted recklessly, causing his daughter to suffer serious physical injury. Judge Bryner applied the correct culpable mental states provided for in the statutes in finding Michael guilty. Under AS 11.81.610(b), the culpable mental state of "knowingly" must be applied to Michael's conduct.[5] The terms "knowingly" and "recklessly" are defined in AS 11.81.900(a)(2) and (3). It seems clear to us that when a statute provides that where a person knowingly engages in conduct and that as a result of that conduct he recklessly causes serious physical injury to another person, the legislature has provided a sufficient culpable mental state to allow for the conviction of a felony offense. *Cf. State v. Dunlop,* 721 P.2d 604, 610 (Alaska 1986) (It is forseeable that driving while intoxicated poses a substantial risk of causing multiple deaths. Consequently, a person who drives while intoxicated may be held responsible for a separate crime for each death or injury which results from a single act of driving while intoxicated.).

Michael next contends that the state improperly charged him with assault because two other statutes more closely fit the crime with which he was charged. Michael points to AS 11.41.250, "reckless endangerment," and AS 11.51.100, "endangering the welfare of a minor." AS 11.41.250 provides:

(a) A person commits the crime of reckless endangerment if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

(b) Reckless endangerment is a class A misdemeanor.

AS 11.51.100 provides:

(a) A person commits the crime of endangering the welfare of a minor if, being a parent, guardian, or other person legally charged with the care of a child under ten years of age, the person intentionally deserts the child in any place under circumstances creating a substantial risk of physical injury to the child.

(b) Endangering the welfare of a minor is a class C felony.

▪▪▪ Under the circumstances of this case, reckless endangerment would have been a lesser-included offense of the assault charge. In order to convict Michael of assault in the second degree, in addition to the elements of reckless endangerment, the state needed to prove that as a result of Michael's conduct his daughter suffered serious physical injury. Michael has not cited us to any authority which would require the state to charge a lesser offense where it can prove the accused committed a greater offense. The court in *State v. Walden,* 306 N.C. 466, 293 S.E.2d 780, 787 (N.C.1982) rejected an argument similar to the one Michael raises.

▪▪▪ The endangering the welfare of a minor statute simply does not seem to ap-

---

5. AS 11.81.610(b) provides:
    Except as provided in AS 11.81.600(b), if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to

(1) conduct is "knowingly"; and
(2) a circumstance or a result is "recklessly."
*See Neitzel v. State,* 655 P.2d 325, 328–30 (Alaska App.1982).

ply to Michael's conduct. Steven Michael did not intentionally desert D.M., and Michael essentially concedes that the legislative history of AS 11.51.100 would not support applying this statute to his conduct. We therefore find no merit to Michael's argument.

■ Michael was convicted of violating AS 11.41.210(a)(2). Alaska Statute 11.41.210(a)(2) provides:

(a) A person commits the crime of assault in the second degree if

(2) that person recklessly causes serious physical injury to another person.

Alaska Statute 11.41.230(a)(1) provides:

(a) A person commits the crime of assault in the fourth degree if

(1) that person recklessly causes physical injury to another person.

These two statutes are identical except with respect to the seriousness of the physical injuries. Michael argues that there is no evidence that he knew of the seriousness of the injuries being inflicted on his daughter. He therefore argues that he should have been convicted of assault in the fourth degree instead of assault in the second degree.

The seriousness of the injuries, however, is a result element for which the culpable mental state is "recklessly," not "knowingly." AS 11.81.610(b)(2). Michael, therefore, did not need to know that the injuries were serious, he only needed to be reckless concerning the risk that D.M.'s injuries would be serious. Serious physical injury is defined in AS 11.81.900(b)(50):

(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or

(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy[.]

Judge Bryner found that Michael was reckless concerning the risk that his daughter might suffer serious physical injury and that as a result of Michael's recklessness in failing to protect his daughter, serious physical injuries occurred. These findings are sufficient to support a verdict of guilty of assault in the second degree. We therefore find no error.

Michael argues that his conviction of assault in the second degree for failing to act to protect his daughter was not the same offense as charged in the indictment. He argues that he was convicted based upon a legal theory which the state never presented to the grand jury. We will assume, for purposes of this argument, that Michael is correct that it was necessary for the state to present to the grand jury the theory of conviction which Judge Bryner ultimately accepted. *See State v. James*, 698 P.2d 1161 (Alaska 1985) (trial jury does not have to unanimously agree upon the particular statutory theory of the crime charged).

■ A conviction for an offense different than the one charged is a fatal variance, and requires reversal. *Simpson v. State*, 705 P.2d 1328 (Alaska App.1985). The claim of fatal variance is a question of law which we review *de novo*. *Patterson*, 740 P.2d at 946 n. 7.

■ At Michael's trial, Judge Bryner found:

As to Steven Michael, I'll begin with the conclusion that I do have a reasonable doubt as to Steven Michael's guilt under a theory that he personally acted to assault his child. I think I have a reasonable doubt as to whether he took any personal action to—to batter or strike, or otherwise personally injure his child directly. I also believe that the evidence establishes a reasonable doubt or leaves me with a significant reasonable doubt as to whether it was ever Mr. Michael's intent to aid or abet or further the acts— the direct acts involved on the part of his wife.... I find specifically that he was aware of a substantial probability that his daughter was being mistreated, or physically abused by his wife. And that he failed to act in the fact of—of that awareness. As a result, I further find that as a result of his failure to act, that his daughter suffered serious physical injury.

Michael argues that this was a new legal theory which was not presented to the grand jury. The indictment charged Michael with thirteen counts, each count representing a different broken bone:

That on or about November 5, 1985, through January 5, 1986, at or near Anchorage, in the Third Judicial District, State of Alaska, LORELI L. MICHAEL and STEVEN A. MICHAEL, either personally or as a person who is legally accountable for the conduct of another, did unlawfully and intentionally [i.e., knowingly] perform an act that resulted in serious physical injury to D.M. under circumstances manifesting extreme indifference to the value of human life, by fracturing the [name of the bone].

During the grand jury proceeding, the assistant district attorney told the grand jury that parents have a legal obligation to protect their children and that a parent could be guilty of assault for failing to protect a child. The assistant district attorney discussed this theory of conviction as an element of accomplice liability. However, a parent who acts recklessly and thereby causes physical injury to a child is guilty as a principal, not as an accomplice. Nevertheless, the theory that Michael had committed the crime of assault by failing to protect his daughter was presented to the grand jury. As we have formerly indicated, this was a proper theory under which Judge Byrner could convict Michael of assault. We fail to see any merit to Michael's argument.

■ In a related argument, Michael contends that the indictment did not give him sufficient notice that he could be convicted on the theory that he had failed to act to protect his daughter. An indictment must put the defendant on notice of the charges against which he must defend. *Thomas v. State*, 522 P.2d 528, 530 (Alaska 1974).

First, the theory that Michael was guilty of assault because he had failed to act to protect his child was presented to the grand jury. Second, it appears that the state also made Michael aware that it would pursue the failure to act theory in its response to Michael's omnibus hearing motions. Michael received the state's responses approximately a month before trial. Third, at the outset of the trial Michael asked Judge Bryner to clarify whether the state would be permitted to proceed on the failure to act theory. Judge Bryner said that he would reserve a final ruling on the law until he rendered his verdict, but he gave his preliminary impression that the state's failure to act theory was a legitimate one. He indicated he would permit the state to pursue this theory. Michael did not move for a continuance or indicate surprise. It therefore appears that Michael had sufficient notice of the state's failure to act theory before trial and that Michael also waived any objection by failing to move for a continuance. We find no merit to Michael's contention that he did not have sufficient notice of the state's failure to act theory.

■ Michael also argues that the indictment was insufficient because it was not sufficiently clear to allow him to plead double jeopardy if he was again charged with the same offense. He essentially argues that his conviction for failure to protect his child is a different charge from a charge that he personally assaulted his child or acted as an accomplice to an assault. We disagree. Michael was charged with and convicted of assaulting D.M. on or about November 5, 1985, through January 5, 1986. Steven Michael could not be convicted of committing those same assaults a second time under a different legal theory. His double jeopardy argument has no merit.

■ Michael also argues that his conviction was improper because the indictment charged him and his wife with doing the same acts, yet he and his wife were convicted under different theories and he was convicted on lesser offenses and fewer counts. However, in deciding guilt, the finder of fact must consider each defendant and each count separately. Judge Bryner found that Loreli Michael personally assaulted D.M. on three separate occasions and that Steven Michael was aware of the abuse following the first assault and failed

to act to prevent the latter two assaults. Judge Bryner apparently concluded that he had a reasonable doubt whether Steven Michael committed an offense in failing to prevent the first assault. However, after he became aware of the first assault, Steven Michael was reckless in failing to act to prevent the latter two assaults. This finding is supported by the evidence, and we conclude that Judge Bryner did not err in convicting Steven Michael on a different theory and on fewer counts than Loreli Michael.

Michael argues that the evidence was insufficient to support Judge Bryner's finding that: "I find specifically that he was aware of a substantial probability that his daughter was being mistreated, or physically abused by his wife.... I further find that as a result of his failure to act, that his daughter suffered serious physical injury."

In determining whether the evidence was sufficient to support a verdict, this court examines the evidence and the inferences to be drawn therefrom in the light most favorable to the state. If the evidence, when viewed in that light, is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt of Michael's guilt, then there is sufficient evidence to support the verdict. *Beck v. State*, 408 P.2d 996, 997 (Alaska 1965).

In viewing the evidence under this standard, we conclude that there was sufficient evidence to support Michael's conviction. Michael made statements to his mother concerning his suspicions that his wife might be harming the baby. Considerable medical testimony was presented at trial as to the seriousness of D.M.'s injuries. Taking the evidence in the light most favorable to the state, someone who was living in the same household as D.M. would have known well before D.M. was taken to the hospital on January 5, 1985, that D.M. had been severely injured on previous occasions. In addition, Michael's statements and actions after his daughter went to the hospital support the inference that he knew that his wife was deliberately injuring D.M.

We conclude that there was sufficient evidence to support the verdict.

The conviction is AFFIRMED.

BRYNER, C.J., not participating.