**David JURCO, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–3558.**

Court of Appeals of Alaska.

Aug. 30, 1991.

David Jurco, pro se.

Eugene B. Cyrus, Asst. Dist. Atty., Steven H. Morrissett, Dist. Atty., Palmer, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

MANNHEIMER, Judge.

On February 10, 1990, David Jurco called the Alaska State Troopers to report that he had shot a moose which had charged him at his Talkeetna residence. The trooper dispatcher told Jurco not to touch the moose until the Troopers had contacted a game warden.

Approximately one hour later, Fish and Wildlife Protection Officer Garland Dobson telephoned Jurco. Dobson told Jurco that the Alaska game regulations required Jurco to salvage the meat from the moose and also required Jurco to turn the meat over to the authorities. When Jurco learned that he could not keep any of the moose meat, he told Dobson that he would not gut the moose or take any other steps to salvage the meat, other than allowing the officers to retrieve the carcass.

914

Officer Dobson, accompanied by Officer Michael Sears, went to Jurco's residence and found the driveway blocked by a car; signs reading "No Trespassing" had been erected at the entrance to the property. Dobson spoke with Jurco, asking him again if he was going to gut the moose; Jurco persisted in his refusal to do this. Dobson then dragged the moose carcass to the road so that it could be picked up by a charitable agency on the Department of Public Safety's "road kill" list. While the officers were waiting for the moose carcass to be picked up, Officer Smith spoke with Jurco and gave him one more opportunity to voluntarily gut the moose; Jurco once more declined.

Because of his refusal to gut the moose, Jurco was charged with violating 5 AAC 92.410(b), a regulation which governs the killing of game when required in the defense of life or property. This regulation provides:

> (b) Game taken in defense of life or property is the property of the state. A person taking such game shall immediately salvage the meat ... and must immediately surrender the salvaged meat to the [D]epartment [of Fish and Game]. ... A person taking game under this section shall notify the department of the taking immediately and shall submit a written report of the circumstances of the taking to the department within 15 days after the taking.[1]

Violation of this regulation is a class A misdemeanor under AS 16.05.925. Jurco was convicted of this offense following a jury trial in the Palmer district court. Superior Court Judge Beverly W. Cutler, sitting *pro tempore* in the district court, sentenced Jurco to 270 days in jail with 180 days suspended, plus a $1000 fine with $600 suspended. Jurco was placed on 5 years' probation. Judge Cutler gave Jurco the option of performing 240 hours of community work service in lieu of 30 days of his jail sentence; Jurco accepted this offer.

Jurco now appeals his conviction, contending that he was under no legal duty to gut the moose. We agree and reverse his conviction.

The regulation under which Jurco was charged required him to "immediately salvage the meat" of the moose and "immediately surrender the salvaged meat" to the Department of Fish and Game. The nub of this case, then, is the definition of "salvage".

There is no definition of "salvage" contained in AS 16.05.940, the definitional section of AS 16.05, nor is any definition of this term contained in 5 AAC 92.990, the definitional section of 5 AAC 92. This court therefore turns to the dictionary to ascertain the common or "plain" meaning of the word. *Michael v. State*, 767 P.2d 193, 197 (Alaska App.1988).

*Webster's New World Dictionary* (3rd College Edition, 1988), page 1186, gives the pertinent definition of "salvage" as "the saving or rescue of any goods, property, etc. from destruction, damage, or waste". Thus, when 5 AAC 92.410(b) speaks of a person's duty to "salvage" the meat of a game animal killed in the defense of life or property, the regulation calls upon the person to "sav[e] or rescue" the meat from "destruction, damage, or waste".

■ Jurco did this. Upon killing the moose, he immediately notified the authorities. The authorities came to his residence in less than two hours. Upon their arrival, Jurco complied with the second requirement of 5 AAC 92.410(b): the duty to "immediately surrender" the salvaged meat to the Department of Fish and Game.

■ We wish to emphasize that the duties of "salvaging" and "surrendering"

---

1. The evidence presented at Jurco's trial indicates that the authorities gave Jurco an erroneous version of this regulation. Dobson testified that, when he spoke with Jurco on the telephone, he read Jurco the text of 5 AAC 92.410 from the pamphlet, "Alaska Game Regulations", No. 30, for the year July 1, 1989 to June 30, 1990 (admitted at trial as Plaintiff's Exhibit 6).

This regulation was substantially amended on August 20, 1989, shortly after the publication of this pamphlet. Thus, the text of the regulation printed on page 9 of the pamphlet differs substantially from the version of the regulation actually in effect on February 10, 1990, when Jurco killed the moose. However, this discrepancy does not affect our decision in this case.

the meat are not met by merely notifying the authorities of the location of the kill and inviting them to come pick up the animal. A person who has killed a game animal in defense of life or property is under a duty to deliver the meat to the authorities and to exercise reasonable care in assuring that the meat is delivered in an edible condition. These duties may in some circumstances require the person to take affirmative steps to preserve the meat and to transport the meat to the authorities.

The Department is not obligated to retrieve an animal killed in a remote location. Even when the kill occurs near a roadway, as in the present case, the press of other business may prevent the authorities from promptly coming to the site of the kill to retrieve the animal. Thus, the person who has killed the animal may be confronted with the practical necessity of gutting the animal and cutting up the meat in order to comply with the twin requirements of salvaging and surrendering the meat.

However, the circumstances of Jurco's case are different. When Jurco telephoned the Troopers to notify them of the kill, he was told that officers would come to his house and that he should refrain from doing anything with the moose until they arrived. When the officers got to Jurco's house, Jurco turned the recently killed moose over to them; the animal was dragged to the road, and a little later it was picked up by a charitable organization.

Thus, while there will often be cases in which a person must butcher a game animal in order to comply with the requirements of 5 AAC 92.410(b), this was not true in Jurco's case. Jurco complied with his legal obligations to preserve the meat and surrender it to the authorities in edible condition. Under the facts presented here, Jurco had no additional duty to butcher the animal for the convenience of the authorities or the charitable organization that ultimately received the meat.

For these reasons, the judgement of the district court is REVERSED.