Randall A. REISCHMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1150.

Court of Appeals of Alaska.

Dec. 4, 1987.

---

Linda K. Wilson, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Randall A. Reischman was indicted for kidnapping, sexual assault in the first degree, two counts of sexual assault in the second degree, and robbery in the first degree. All of these offenses allegedly arose out of Reischman's contact with T.C., a seventeen-year-old girl, on August 12, 1984. Reischman was convicted, following a jury trial, of two counts of sexual assault in the second degree, and a lesser-included offense of robbery: theft in the fourth degree. Reischman appeals to this court. We find error and reverse.

Reischman and T.C. both testified at trial. Their versions of the event differ significantly.

### T.C.'S TESTIMONY

T.C. testified as follows. On August 12, 1984, she went to a party. She then decided to leave the party and set off toward a pay phone to call a cab. While she was walking along the Old Seward Highway she saw a truck parked by the side of the road. As T.C. walked by the passenger side of the truck, a man in the truck opened the door, pointed a gun at her head, and ordered her to get into the truck. She struggled with the man, but he pulled her into the truck. The man then put the gun down by his side, and they drove around town, stopping at various places. While they were driving around, the man held on to her by her hair, slapped her, choked her, and told her that he had killed other women and put them in quicksand. He told T.C. that he would do the same thing to her if she did not cooperate. He also repeatedly asked her if she wanted to see his gun.

While they were driving they went to a liquor store on Spenard Road. At this point, the man, who she later identified as Reischman, went inside and bought a six-pack of beer, leaving T.C. alone in the truck for a few minutes. While Reischman was inside the liquor store, T.C. talked with a teenage boy for whom Reischman was buying liquor. T.C. told the boy that Reischman was weird and asked the boy for a ride. The boy refused to give her a ride.

T.C. and Reischman then went to the home of a friend of Reischman. The friend, however, was not home. Eventually, T.C. and Reischman went to the south of Anchorage and parked. Reischman then forced T.C. to unzip his pants and masturbate him using Vaseline. Reischman told T.C. that if she did not masturbate him right, then she might not make it to her eighteenth birthday. He told T.C. she was the stupidest person and the most inexperienced slut he had ever met. Reischman then asked T.C. if she had any money, and told T.C. to give him her purse. Reischman then took her purse. He then pulled off her bra and told her lift up her shirt so he could see her breasts. Reischman touched her breasts and then said, "Is this what seventeen-year-old breasts look like?" Reischman then tried to put his hand down her pants but she resisted and started hitting Reischman. He then wanted T.C. to kiss his penis. T.C. stated that she put Reischman's penis in her mouth "a little bit." T.C. then tried to get out of the truck. T.C. and Reischman began to fight. Reischman pulled at T.C.'s shirt and ripped it. During the fight, T.C. managed to bite Reischman's hand, and kick him in the testicles, and get out of the truck.

T.C. ran into the woods and hid. She heard two people, Thomas and David Pease, who said they would help her. Thomas Pease testified that he and his brother heard T.C. and Reischman fighting, and heard Reischman yell, "You better [run], bitch, because I'm getting my gun." They then went to offer help to T.C.

Thomas and David Pease helped T.C. back to their house, and called the troopers.

## REISCHMAN'S TESTIMONY

Reischman testified that he offered T.C. a ride and she voluntarily got into his truck. He stated he did not own or possess a gun and did not force T.C. into the truck. Reischman then took T.C. to a friend's house. No one was home, however, so he returned to the truck. Reischman then drove T.C. to the Buckaroo Liquor Store on Spenard Road. Reischman got out of the truck, leaving T.C. in the truck, and went inside the liquor store to purchase a six-pack of beer. When Reischman came out of the liquor store with the beer, he was approached by a young man who asked him to buy him some beer. Reischman went back inside and purchased some beer for the young man. Reischman then got back into the truck. Reischman then stopped at a convenience store and bought some cigarettes. He then asked T.C. what she would like to do. T.C. told Reischman that he could take her home and began to direct him to the Rabbit Creek area. T.C. then suggested that he pull over on the road so that they could finish the beer. They drank beer, talked a little, and started to kiss. Reischman testified that he felt T.C.'s breasts. T.C. unzipped his pants and fondled his penis. After about five minutes of fondling his penis, T.C. began using Vaseline while massaging his penis for a total of twenty-five to thirty minutes. Reischman denied that he had sexual intercourse, or that T.C. performed fellatio on him and testified that all the sexual contact was consensual.

After some period of time, Reischman concluded that he was not going to have an orgasm and suggested that they should stop and go home. T.C. then became angry and they began fighting. Reischman asked T.C. to get out of the truck and reached over to open the passenger door. T.C. knocked him away. T.C. then bit his hand. Reischman then hit T.C. in the mouth, and they began pulling each other's hair and kicking, scratching, and fighting. T.C. then kicked him in the testicles and took off running. Reischman yelled at her, "You'd better run, bitch," and got back in the truck and drove off.

## DISCUSSION

Reischman first argues that the trial judge erred in failing to give an instruction on assault in the fourth degree as a lesser-included offense to the two counts of sexual assault in the second degree. Reischman concedes that he did not request a lesser-included offense instruction on assault in the fourth degree. In order to prevail, therefore, Reischman must establish that failure to give an instruction on assault in the fourth degree constituted plain error. Alaska Rule of Criminal Procedure 47(b).

Sexual assault in the second degree is defined in AS 11.41.420, which provides in pertinent part:

(a) An offender commits the crime of sexual assault in the second degree if the offender engages in

(1) sexual contact with another person without consent of that person; ...

Assault in the fourth degree, AS 11.41.230, is defined as follows:

(a) A person commits the crime of assault in the fourth degree if

(1) that person recklessly causes physical injury to another person;

(2) with criminal negligence that person causes physical injury to another person by means of a dangerous instrument; or

(3) by words or other conduct that person recklessly places another person in fear of imminent physical injury.

Assault in the fourth degree is a lesser-included offense of first or second-degree sexual assault in which the defendant claims that the sexual contact was consensual, and there is some evidence to show that the defendant assaulted the victim. *Nathaniel v. State*, 668 P.2d 851, 854 (Alaska App.1983). Any assault on T.C. under Reischman's testimony, however, occurred after the consensual sexual contact. Therefore, the later assault on T.C. was a separate offense. *See Hartley v. State*, 653 P.2d 1052, 1054 (Alaska App.1982). Furthermore, Reischman's counsel argued

to the jury that Reischman was guilty of assaulting T.C. by hitting her after the consensual sexual contact. Counsel pointed out to the jury, however, that Reischman had not been charged with assault and battery. It appears to us that Reischman strategically chose to not request the lesser-included offense of assault in the fourth degree, but rather chose to ask the jury to acquit him entirely if the jury found he was merely guilty of assault. Under these circumstances, we decline to find plain error.

Reischman next argues that the trial judge erred in instructing the jury regarding his awareness of T.C.'s lack of consent to sexual contact. Again, Reischman concedes that he did not object to the trial court's instructions so that he must meet a plain error standard. In Jury Instruction Number 24, the trial judge instructed the jury on the elements of sexual assault in the first degree. In that instruction, the court indicated that the third element of the offense was that "the penetration occurred without [T.C.'s] consent." In Jury Instruction Number 29, the trial judge instructed the jury as follows:

> It is a defense *to a charge of sexual assault in the first degree* that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual penetration or sexual contact. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual penetration *or sexual contact* you must give the defendant the benefit of that doubt and acquit him of said charge. (Emphasis added.)

In Jury Instruction Number 30, the court instructed the jury on sexual assault in the second degree. That instruction states as follows:

> The defendant has been charged with two counts of sexual assault in the second degree.
> A person commits the crime of sexual assault in the second degree if he engages in sexual contact with another person without consent of the person.

> In order to establish the crime of sexual assault in the second degree, it is necessary for the state to prove beyond a reasonable doubt the following:
> First, that the event in question occurred at or near Anchorage, and on or about August 12, 1984;
> Second, that Randall A. Reischman engaged in sexual contact with T.C.; and
> Third, that the sexual contact occurred without her consent....

The state concedes that Jury Instruction Number 29 was erroneous. In *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App.1983), this court held that in order to convict a person of sexual assault in the first degree the jury must find that defendant knowingly engaged in sexual intercourse, and that he recklessly disregarded his victim's lack of consent. *See also Laseter v. State*, 684 P.2d 139, 142–43 (Alaska App.1984) ("reasonable belief" instruction was erroneous in light of the *Reynolds* decision). Reischman points out another problem with Instruction Number 29. Since Instruction Number 29 referred only to sexual assault in the first degree, the jury could have concluded that this defense did not apply to a charge of sexual assault in the second degree.

■ In order to establish plain error, the appellant must show that the error was obvious and substantially prejudicial. *Carman v. State*, 658 P.2d 131, 137 (Alaska App.1983); *Potts v. State*, 712 P.2d 385, 390 (Alaska App.1985). Normally this case might not present much of a problem. The jury was faced with two diametrically opposed versions of the facts. T.C. testified to facts which, if believed, would have established that she was abducted at gun point and was clearly coerced to have sexual contact with Reischman. Reischman testified that the sexual contact was consensual, and that T.C. was an active participant in the sexual contact.

■ This case, as argued, did not turn on whether Reischman might have recklessly disregarded T.C.'s lack of consent. Therefore, apparently, neither counsel nor the court focused on the instructions regarding

whether Reischman might have recklessly disregarded T.C.'s lack of consent. The jury must have had a reasonable doubt about some of T.C.'s testimony, because it failed to convict on all charges. The jury also did not believe Reischman's version of the incident in all respects, since it convicted him of two counts of sexual assault in the second degree and the fourth-degree theft charge.

We have no way of knowing for sure what facts the jury found in arriving in its verdict. It seems likely that the jury might have had problems with the kidnapping charge because T.C. did not take advantage of opportunities to escape when Reischman left his truck. The testimony of T.C. supporting the sexual assault in the first-degree charge was equivocal. T.C. testified that she put Reischman's penis in her mouth "a little bit." It is therefore not surprising that the jury did not convict on this charge. In convicting Reischman of theft in the fourth degree, but rejecting the charges of robbery in the first degree and robbery in the second degree, the jury had to find that Reischman took property from T.C., but had to have a reasonable doubt whether he used force or threatened force to obtain the property.

In attempting to analyze the verdicts, we find that we cannot eliminate the substantial possibility that the jury verdicts on second-degree assault may have turned on whether Reischman believed that T.C. consented to the sexual contact. In rejecting the kidnapping charge, the jury appears to have had a reasonable doubt that T.C. was abducted without her consent. In rejecting the robbery charge, the jury apparently had a reasonable doubt that Reischman took T.C.'s property by force.

If the jury was concerned about whether T.C. had not been kidnapped, but instead was consenting to being with Reischman because she had not taken the opportunity to escape, the jury might also have been concerned about whether Reischman believed that T.C. was also consenting to the later sexual contacts. If the jury looked at Instruction Number 29 on this issue, that instruction could clearly have been prejudicial to Reischman. Instruction Number 29 first tells the jury that it is a defense that the defendant "entertained *a reasonable and good faith belief* that the female person voluntarily engaged in sexual penetration or sexual contact." As we have previously stated, our former decisions have held that the defendant must *recklessly disregard* the victim's lack of consent. Thus the instruction required the state to prove a lesser culpable mental state for conviction.

The main problem with Instruction Number 29, however, is that it appeared to apply the defense of the defendant's belief that the victim consented only to sexual assault in the first degree. On these instructions, it would be reasonable for the jury to conclude that even if it found that the defendant reasonably believed T.C. consented to the sexual contact, this reasonable belief would only be a defense to first-degree sexual assault, not to second-degree sexual assault.

The error in Instruction Number 29 is clear. Whether that instruction was substantially prejudicial is a close question. In analyzing the instructions in light of the jury's verdict, however, we have serious concerns whether Reischman was properly convicted.

Accordingly, the conviction must be RE-VERSED.