Kevin WILLIS and Barbara Nauska, Appellants,

v.

STATE of Alaska, Appellee.

Nos. A–7587, A–7778.

Court of Appeals of Alaska.

Oct. 25, 2002.

Kathleen A. Murphy and Wally Tetlow, Assistant Public Defenders, and Barbara K. Brink, Public Defender, Anchorage, for Appellant Willis.

Chet Randall, Portland, Maine, for Appellant Nauska.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, Judge.

Kevin Willis and Barbara Nauska were indicted for seriously injuring their two-month-old child. At six o'clock in the evening on July 17, 1997, Nauska brought the baby to the emergency room at Bartlett Regional Hospital in Juneau. The baby had a fractured skull and broken ribs.

According to medical testimony, these injuries were likely inflicted when someone grasped the infant by its chest and bashed its head against a wall or other hard object. Medical testimony also indicated that the baby sustained these injuries during the two hours preceding his arrival at the hospital. During most of this time, the infant was in the care of Willis and Nauska on their small

houseboat. However, Willis and Nauska both claimed that they did not know how the baby was injured.

Following a police investigation, Willis and Nauska were indicted for second-degree assault. The State conceded that it could not prove which of them had assaulted the baby. However, the indictment was based on the theory that one of them had personally assaulted the infant while the other had knowingly stood by and allowed the assault to happen—thus violating their parental duty to protect the child and rendering them criminally liable for the resulting injuries. *See Michael v. State,* 767 P.2d 193, 198–99 (Alaska App.1988).[1]

At trial, Willis and Nauska asserted that their babysitter, Patrick Prewett, had assaulted the baby before they returned home that afternoon. The jury rejected this defense and convicted Willis and Nauska of second-degree assault under AS 11.41.210(a)(2)—"recklessly caus[ing] serious physical injury to another person". Both defendants now appeal their convictions and their resulting sentences.

*The defendants' assertion that the State presented inadmissible evidence to the grand jury*

Both Willis and Nauska argue that their indictments were fatally flawed by inadmissible and prejudicial evidence that was presented to the grand jury.

■ The grand jury heard testimony indicating that Nauska showed little affection for the infant and little interest in him while he was being treated at the hospital. We agree with the superior court that this testimony was relevant.

■ The grand jury heard testimony indicating that Willis and Nauska had previously mistreated the infant and had also mistreated his two-year-old brother. In addition, the grand jury heard evidence that Willis had mistreated Nauska and had hit another woman named "Joni". The grand jury heard testimony that Willis's and Nauska's two children suffered from developmental difficulties. Finally, the grand jury also viewed photographs depicting the squalid condition of Willis's and Nauska's houseboat. Willis and Nauska argue that all of this evidence improperly suggested that they were bad parents and that Willis was abusive toward women.

Superior Court Judge Larry R. Weeks concluded that even if this evidence should not have been presented to the grand jury, there was no realistic possibility that this evidence affected the grand jury's decision to indict Willis and Nauska. We agree.

■ When inadmissible evidence is presented to the grand jury, a court must engage in a two-part analysis:

> The superior court first subtracts the improper evidence from the total case heard by the grand jury and determines whether the remaining evidence would be legally sufficient to support the indictment. If the remaining evidence is legally sufficient, the court then assesses the degree to which the improper evidence might have unfairly prejudiced the grand jury's consideration of the case. The question the court must ask itself is whether, even though the remaining admissible evidence is legally sufficient to support an indictment, the probative force of that admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury's decision to indict.

*Stern v. State,* 827 P.2d 442, 445–46 (Alaska App.1992).

When we apply this test to Willis's and Nauska's case, we reach the same conclusion as Judge Weeks. The grand jury heard uncontradicted evidence that the baby suffered serious physical injuries and that these injuries were not suffered accidentally but rather were inflicted deliberately. The grand jury also heard evidence strongly suggesting that the baby had suffered these injuries while he was in Willis's and Nauska's sole care. This evidence was sufficient to support Willis's and Nauska's indictment for second-degree assault. Even assuming that

---

**1.** *Reversed on other grounds,* 805 P.2d 371 (Alaska 1991).

the grand jury should not have heard the evidence that Willis and Nauska complain of, it does not appear likely that this improper evidence was "the decisive factor in the grand jury's decision to indict".

For these reasons, Judge Weeks acted properly when he denied Willis's and Nauska's motion to dismiss the indictment.

*The adequacy of the trial judge's curative instruction when Patrick Prewett—a witness and one-time suspect—referred to the fact that he had taken a polygraph examination*

Although Willis and Nauska were with their infant son for the ninety minutes to two hours immediately before he was brought to the hospital, another person—Patrick Prewett—had babysat the infant earlier that same afternoon. The police therefore investigated Prewett as a potential suspect. During this investigation, the police asked Prewett to take a polygraph examination. The results were inconclusive.

Before trial began, the prosecutor asked Judge Weeks to issue a protective order barring either defense attorney from mentioning Prewett's polygraph test and its inconclusive results. Judge Weeks granted this request.

During trial, when Nauska's attorney was cross-examining Prewett, the defense attorney asked Prewett whether he remembered his interview with Sgt. Hernandez of the Juneau Police Department. Prewett responded, "Oh, yes. I know the one you're talking about now. He was on the lie detec—I was on—as to the lie detector."

A few moments later, Nauska's attorney asked for a mistrial. His sole stated reason was that Prewett had referred to information that the court had excluded.

Judge Weeks declined to order a mistrial. Instead, he proposed the following curative instruction:

Normally, evidence about a lie detector test is not admissible in evidence in court. This is because courts have determined that such evidence is not sufficiently reli-

able. Evidence about a lie detector was mentioned by Mr. Prewett.

Mr. Prewett was administered a lie detector test by the Juneau Police. The results of that test were inconclusive. It is for you to determine the weight to give to Mr. Prewett's testimony. You should weigh his testimony in the manner I've explained about weighing any witness's testimony.

Both defense attorneys announced that they had no objection to this instruction. Nauska's attorney added, "for the record", that he did not wish to abandon his earlier motion for a mistrial, but he offered no explanation of why he thought that Judge Weeks's instruction was inadequate to cure the problem.

On appeal, both Nauska and Willis contend that Judge Weeks erred in failing to grant Nauska's motion for a mistrial.

■ Willis concedes that his trial attorney did not join Nauska's motion, but he argues that Judge Weeks's failure to declare a mistrial was plain error. Willis is barred from pursing this argument. To prove plain error, a litigant must show that their attorney had no tactical reason for failing to object to the alleged error.[2] Here, the record shows that Willis's attorney made a purposeful decision not to join Nauska's motion for a mistrial. Willis may now believe that his attorney's decision was mistaken, but the decision was clearly tactical and was not plainly incompetent.

Turning to Nauska's claim of error, we again note that Nauska's attorney failed to articulate any reason why a mistrial was required—*i.e.*, why Judge Weeks's curative instruction was inadequate. This is tantamount to failing to preserve this claim of error. Under Alaska Criminal Rule 46, an attorney does not preserve a claim of error unless, "at the time the ruling or order of the court is made or sought, [the attorney] makes known to the court the action which the party desires the court to take or the

**2.** *See Massey v. State,* 771 P.2d 448, 453 (Alaska App.1989); *Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985).

[attorney's] objection to the action of the court *and the grounds therefor* ".

■ We have repeatedly held that a trial attorney must do more than object; the attorney must also apprise the trial court of their reasons for objecting (unless those reasons are obvious). An objection without an accompanying statement of reasons is not sufficient to preserve a point on appeal.[3] Nauska must therefore show that Judge Weeks committed plain error by failing to declare a mistrial.

■ This Court has previously pointed out the dangers of polygraph evidence. The chief danger is that jurors may view polygraph results as an objective, scientific assessment of a witness's credibility, or they may rely on polygraph results instead of carefully evaluating conflicting testimony.[4] But Judge Weeks's curative instruction addressed these problems. He told the jury that polygraph evidence is inherently unreliable and that, in any event, Prewett's polygraph test yielded inconclusive results. He further told the jury that they should evaluate Prewett's testimony in the same manner as the testimony of the other witnesses in the case.

Nauska points out that there is an additional problem with polygraph evidence. Leaving aside the question of whether the test results prove anything, a jury may conclude that a witness's willingness to take a polygraph test·is circumstantial evidence that the witness is telling the truth.[5]

It is true that Judge Weeks's curative instruction failed to expressly tell the jurors not to speculate about Prewett's willingness to take the polygraph examination. However, this was a problem that could easily have been cured if either of the two defense attorneys had spoken up. As explained above, Judge Weeks asked the two defense attorneys if they had any objection to his proposed curative instruction, and both attorneys announced themselves satisfied with it. Although Nauska's appellate attorney has now identified a potential omission in Judge Weeks's instruction, we will not reverse Nauska's conviction unless it is clear that the fairness of Nauska's trial was prejudiced by this omission.[6]

Here, the jury was told that Prewett took a polygraph test, but there was no evidence that Prewett volunteered to take the test. For all the jury knew, Prewett might have been unwilling to take the test and did so only because of police pressure. No one suggested that Prewett actively sought or willingly consented to the polygraph examination.

Nauska points out that the jury heard testimony that the authorities ultimately concluded that Prewett had not assaulted the baby. But this fact was obvious: Willis and Nauska were indicted, and Prewett was not. The real question is whether the jury was led to believe that the authorities based their decision on Prewett's polygraph results.

**3.** *See Petersen v. State,* 930 P.2d 414, 434 (Alaska App.1996) (when an attorney declines to argue the point or provide any rationale for giving a requested jury instruction, the party forfeits any claim of error); *Cornwall v. State,* 915 P.2d 640, 653 n. 11 (Alaska App.1996) (same); *Hohman v. State,* 669 P.2d 1316, 1325–26 (Alaska App.1983) (when an attorney offers evidence which is challenged for lack of relevance, and the proponent of the evidence fails to make an offer of proof concerning the potential relevance of the challenged testimony, the party thereby forfeits the point on appeal).

*See also* Alaska Criminal Rule 30(a) ("No party may assign as error any portion of the charge [to the jury] or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which the party objects and the grounds of the objection.*") (emphasis added).

**4.** *See Leonard v. State,* 655 P.2d 766, 770 (Alaska App.1982).

**5.** *See Leonard,* 655 P.2d at 770; *see also Jackson v. State,* 652 P.2d 104, 107 (Alaska App.1982).

**6.** *See Estate of McCoy,* 844 P.2d 1131, 1134 (Alaska 1993):

Plain error will be found only when an erroneous [jury] instruction creates 'a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice.' *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 91 (Alaska 1974).... [T]he ultimate determination in analyzing plain error in jury instructions is simply whether a correct instruction would have likely altered the result. *Conam Alaska v. Bell Lavalin,* 842 P.2d 148, 153 (Alaska 1992) (citations omitted).

Judge Weeks's curative instruction answers this question: the jurors were told that Prewett had not passed the polygraph test—that his test results were inconclusive.

Moreover, the prosecuting attorney made it clear (both in her opening statement and her summation) that Willis and Nauska were charged with assault based primarily on the fact that they lied about when they returned to their houseboat to resume care of their baby, and on the medical evidence showing that the baby most likely suffered his injuries during the late afternoon while he was in their care.

Finally, we note that Willis and Nauska did not view Prewett's polygraph test results as prejudicing their defense; rather, they believed that Prewett's test results bolstered their defense. As explained above, both defendants argued at trial that Prewett was the true culprit. During Willis's summation to the jury, his attorney reminded the jurors that Prewett's polygraph results had been "inconclusive", and he argued that this adjective aptly described the State's entire case. In other words, Willis's attorney argued that Prewett's inconclusive polygraph results tended to create a reasonable doubt as to Willis's and Nauska's guilt.

Nauska's attorney (who argued second) did not expressly refer to the polygraph results, but he closed his remarks by reminding the jury of the argument made by Willis's attorney:

> *Nauska's Attorney:* As Mr. Meyers [*i.e.,* Willis's attorney] closed, so will I. The metaphor in this case is, the evidence is "inconclusive". The evidence is inconclusive. The State hasn't proven their case. Perhaps the defense has indicated to you that the State should continue to look at Mr. Prewett. Thank you.

For these reasons, we conclude that Judge Weeks did not commit plain error when he gave the curative instruction and declined to order a mistrial.

*The adequacy of the jury instructions concerning criminal responsibility based on a parent's failure to act to protect their child*

As explained above, the State could not identify either Willis or Nauska as the per-

son who inflicted the baby's injuries. The State's theory of prosecution was that one of them assaulted their child while the other stood by and allowed the assault to occur. Because the case was litigated this way, the jurors had to be instructed concerning the circumstances under which a parent can be held criminally responsible for failing to protect their child.

Judge Weeks gave the jurors an instruction that combined both theories of criminal responsibility—*i.e.,* responsibility based on personal commission of an assault, and responsibility for failing to act to prevent the assault:

> A person commits the crime of assault in the second degree if, either by acting or by failing to act when he or she has a legal duty to act, that person recklessly causes serious physical injury to another person.
>
> In order to establish the crime of assault in the second degree . . ., it is necessary for the state to prove beyond a reasonable doubt the following:
>
> First, that the event in question occurred at or near Juneau and on or about July 17, 1997;
>
> Second, that the defendant had a duty to protect [the child];
>
> Third, that the defendant performed an act or failed to perform an act which resulted in serious physical injury to [the child];
>
> Fourth, that the defendant acted recklessly.

When Judge Weeks proposed this instruction, Willis's attorney expressed concern that the instruction did not adequately explain the culpable mental state required to prove the "dereliction of duty" theory of culpability:

> *Willis's Attorney:* I think my concern was about the mental state of "recklessly" as to the circumstance . . . that the defendant has to be aware that there is some injury occurring to the child. And I don't think that [this concept] is necessarily reflected in this instruction. . . . [T]he *Michael* [decision] says that the parent has to have some awareness that there was an injury coming about to the child. And I

think the instruction ought to incorporate that.... What I'm saying ... is that I think that somewhere [in the instruction] there ought to be something that says that the parent ought to have be[en] aware of the substantial probability that [the child] was under a risk of physical attack or assault. Am I making sense?

Judge Weeks agreed with Willis's attorney that this was a valid concern, but the judge believed that this concern was fully addressed by the court's separate instruction on the definition of "recklessly":

> The Court: I think that there has to be a substantial probability that [the child] was under a risk of physical attack or assault.... I think that that's included in the definition of "recklessly". [The separate jury instruction on] "recklessly" says, "A person acts recklessly with respect to a result described in the law when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur."
>
> Willis's Attorney: The risk being the injury to [this child]?
>
> The Court: No.... The risk is that an injury may occur.
>
> Willis's Attorney: Okay.

Nauska's attorney then told Judge Weeks that he had no objection to the instruction.

On appeal, Willis and Nauska argue that the jury instruction on the elements of assault fails to correctly state the components of criminal responsibility based on dereliction of duty. As we explain below, the defendants are correct. However, despite the colloquy that we have just quoted, Willis did not bring this problem to Judge Weeks's attention. Thus, both defendants are in the same procedural position on appeal: they must show that Judge Weeks committed plain error by giving this instruction. Given the facts of this case and the way it was litigated, we conclude that this jury instruction did not constitute plain error.

**7.** Our decision in *Michael* was reversed by the Alaska Supreme Court on other grounds. *See Michael v. State,* 805 P.2d 371 (Alaska 1991).

**8.** *Compare Kimoktoak v. State,* 584 P.2d 25, 31 (Alaska 1978) (holding that a defendant can not

*(a) The two culpable mental states that must be proved when a parent is charged with homicide or assault for failing to protect their child*

The elements of criminal responsibility based on dereliction of duty are set out in *Michael v. State,* 767 P.2d 193 (Alaska App. 1988).[7] The *actus reus* of the offense is the defendant's failure to act when the defendant had a duty to act. The State must show that this failure to act was "knowing". (Under Alaska's criminal code, only one culpable mental state—"knowingly"—applies to conduct. *See* AS 11.81.900(a)(1)-(4), as explained in *Neitzel v. State,* 655 P.2d 325, 333 (Alaska App.1982).)

More specifically, when a defendant is prosecuted for failing to act, the State must show that the defendant was aware of the circumstance that triggered the duty to act and that, being aware of this circumstance, the defendant chose to do nothing—*i.e.,* "knowingly" refrained from acting.[8] In the case of a parent prosecuted for assault or homicide for failing to protect their child, the State must prove that the parent knew of the need to take action to protect the child and knowingly refrained from taking action.[9]

In addition to proving this *actus reus,* the State must additionally prove that the parent acted with the requisite culpable mental state regarding the result specified by the offense. (In a homicide prosecution, the prohibited result is death. In an assault prosecution, the prohibited result is either serious physical injury, physical injury, or apprehension of imminent injury.)

At first blush, it might seem superfluous to require proof of a separate culpable mental state regarding the possibility of the child's injury—for, as we have just explained, the State must prove that the parent knew of the need to protect the child in order to establish that the parent's failure to act was "knowing". But children often engage in sports

be convicted of leaving the scene of an accident unless the government proves that the defendant was aware that an accident had occurred).

**9.** *Michael,* 767 P.2d at 200.

and other activities that hold some degree of physical peril. Even though a parent understands that their child might be injured while engaging in these activities, the parent's knowing failure to intervene does not constitute a crime unless the government also proves that the parent acted (or, more precisely, failed to act) with a culpable mental state regarding the potential injury—a culpable mental state that will vary according to the crime charged.

For example, even though a child might conceivably suffer serious physical injury while skiing or while driving a motor vehicle, the child's parent could not be convicted of second-degree assault under AS 11.41.210(a)(2) (recklessly causing serious physical injury) for failing to take protective action unless the government proved that the parent acted "recklessly" with regard to this result—*i.e.,* proved that the parent was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that serious physical injury would occur if the parent failed to intervene. *See* AS 11.81.900(a)(3), the statutory definition of "recklessly".

Under this statutory definition, the government would have to show that the risk of serious physical injury was "of such a nature and degree that [the parent's] disregard of it constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation". This, in a nutshell, is the difference between letting a toddler play with a firearm and letting an adolescent go on a hunting trip.

### (b) Why we conclude that Willis's attorney failed to alert Judge Weeks to the problem in this case

■ When the jury instruction in Willis's and Nauska's case is evaluated in light of the foregoing discussion, one can see that the instruction is flawed. The instruction correctly stated that the State was obliged to prove that the defendants performed an act or failed to perform an act that resulted in serious physical injury to their child. The instruction also correctly stated that the State was obliged to prove that the defendants acted recklessly with regard to this result. But the instruction failed to tell the jury that, before a defendant can be held criminally accountable for failing to act, the State is obliged to prove that the defendant's failure to act was "knowing".

On appeal, Willis points out this flaw. He also contends that he brought this problem to Judge Weeks's attention. But the record shows that he did not.

When Willis's attorney spoke to Judge Weeks about the instruction, he expressed concern that the instruction lacked any language "say[ing] that the parent [had] to have be[en] aware of the substantial probability that [the child] was under a risk of physical attack or assault". The phrase "substantial probability" comes from the statutory definition of "knowingly" in AS 11.81.900(a)(2). One might therefore think that Willis's attorney was directing Judge Weeks's attention to the fact that the instruction failed to mention that a defendant's failure to act must be "knowing". But the subsequent exchange between the defense attorney and Judge Weeks shows that the attorney had not identified this problem.

When Judge Weeks answered Willis's attorney, he agreed that the law required proof of "a substantial probability that [the child] was under a risk of physical attack or assault". However, Judge Weeks told the attorney that he believed this concept was adequately communicated by the definition of "recklessly" contained in a separate jury instruction: "A person acts recklessly with respect to a result described in the law when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur."

At this juncture, if Willis's attorney had been trying to alert Judge Weeks to the fact that the instruction failed to comply with the analysis set out in *Michael,* the defense attorney would have responded that the charge of second-degree assault required proof of *two* culpable mental states—"knowingly" with respect to the defendant's failure to act, and "recklessly" with respect to the defendant's awareness of the possibility that failing to act might result in serious physical injury. But instead of saying this, Willis's attorney said, "Okay". That is, the attorney

agreed with Judge Weeks that the separate instruction on "recklessly" constituted a satisfactory answer to his concerns.

Under Alaska Criminal Rule 30(a), an attorney who objects to a jury instruction must "stat[e] distinctly the matter to which the party objects and the grounds of the objections", so that the trial judge is alerted to the problem and has an opportunity to correct it. Although Willis's attorney expressed concern about the jury instruction defining the elements of second-degree assault, he never articulated the problem that he now raises on appeal. And Nauska's attorney told Judge Weeks that he had no problem with the instruction. Thus, in this appeal, both Willis and Nauska must demonstrate that the instruction constituted plain error.

### (c) Why we conclude that Judge Weeks did not commit plain error when he gave this jury instruction

We have just explained why, when a defendant is prosecuted for second-degree assault based on dereliction of their parental duty, the government's burden to prove that the defendant knowingly failed to act is distinct from its burden to prove that the defendant was reckless with respect to the possibility that their failure to act might result in serious physical injury. Nevertheless, it is often true that the same facts will prove both elements.

For example, if a parent does nothing even though they are aware that their spouse is assaulting their infant child, this fact will tend to prove both the defendant's knowing failure to act and the defendant's recklessness concerning the possibility of serious physical injury. That was the case in *Michael*, and it was also the State's theory of prosecution against Willis and Nauska.

The State presented evidence that Willis's and Nauska's baby sustained serious physical injury in the late afternoon of July 17, 1997, that this injury was the result of an assault rather than an accident, and that Willis and Nauska were alone with the baby on a small houseboat when the injury occurred. The State alleged that one of the two defendants violently assaulted the baby while the other one looked on and did not intervene.

Faced with this theory of prosecution, Willis and Nauska conceivably might have pursued litigation strategies that highlighted the need to instruct the jury on the element of a knowing failure to act. For instance, either defendant might have contended that they left the houseboat for some reason and that their spouse was alone with the baby when the baby was injured. Alternatively, either defendant might have contended that, although they were present on the houseboat when the baby was injured, they had fallen asleep from fatigue and/or intoxication and thus they were unaware that the baby was being assaulted by their spouse. Or either defendant might have asserted that their spouse assaulted the baby but that the assault occurred in an instant, giving the defendant no time to intervene or do anything other than rush the baby to the hospital.

Likewise, the defendants might have pursued a litigation strategy that highlighted the distinction between a knowing failure to act and recklessness concerning the possibility of serious physical injury. For instance, one of the defendants might have asserted that, even though they knowingly failed to prevent their spouse from assaulting the child, they had no reason to believe that the assault would be severe enough to inflict serious physical injury on the baby.

But Willis and Nauska did not pursue such litigation strategies. Instead, from beginning to end, Willis and Nauska jointly asserted that no harm had befallen the baby while he was in their presence. Both defendants argued that Prewett was the culprit—that he assaulted the baby before Willis and Nauska returned to the houseboat in the late afternoon.

Given the way this case was litigated, the jury's crucial task was to determine who injured the baby. If it was either Willis or Nauska, this meant that the remaining spouse witnessed the assault and did nothing. Under these circumstances, the two culpable mental states effectively coalesced. Judge Weeks's jury instruction told the jurors that the State was obliged to prove that the non-assaulting parent acted recklessly—that the non-assaulting parent was aware of and con-

sciously disregarded a substantial and unjustifiable possibility that their spouse would inflict serious physical injury on the baby. Given the defense strategy adopted by Willis and Nauska, such a finding was tantamount to a finding that the non-assaulting parent knowingly failed to protect the baby.

■ In previous cases, we have found plain error when the jury instructions incorrectly defined the essential elements of the charged offense.[10] But there is no plain error when, viewing the trial record as a whole, the erroneous jury instructions had no significant influence on the jury's decision.[11] For the reasons we have just explained, we conclude that the error in Willis's and Nauska's case—the failure to explicitly require proof of a knowing failure to act—had no affect on the jury's decision and was harmless beyond a reasonable doubt.

### Willis's and Nauska's sentence appeals

■ Willis and Nauska were convicted of second-degree assault, a class B felony with a sentencing range of 0 to 10 years' imprisonment.[12] Because both defendants were first felony offenders, their sentences were governed by the benchmark sentencing ranges we established in State v. Jackson, 776 P.2d 320, 326–27 (Alaska App.1989).

In addition, under AS 12.55.125(k)(2), neither defendant could receive more than 4 years' unsuspended imprisonment unless the State proved aggravating factors under AS 12.55.155(c) or exceptional circumstances under AS 12.55.165. However, Judge Weeks found that the State had proved three aggravating factors. (Neither Willis nor Nauska disputes these three aggravators on appeal.)

Two of these factors were fairly straightforward: (c)(5)—that Willis and Nauska knew that their victim (a 2–month–old baby) was particularly vulnerable; and (c)(18)(A)— that the victim was a member of the defendants' household. The third aggravator was based on the evidence at trial. Judge Weeks found aggravator (c)(10)—that the defendants' conduct was among the most serious within the definition of the offense—because the evidence showed that the baby's injuries had been life-threatening.

According to the medical testimony at Willis's and Nauska's trial, their baby suffered a major skull fracture at the back of his head and the posterior fracturing of three ribs— all injuries that bespoke "enormous" or "incredible" force. A doctor testified that the baby's life "was very much at risk" during the first twelve hours of his hospitalization in Seattle. The baby also showed signs of prior injuries to his spine, his arms, and the fingers of his right hand.

Based on the evidence before him, Judge Weeks concluded that Barbara Nauska was most likely the one who assaulted the baby, but the judge also concluded that Kevin Willis knew, from the baby's prior injuries, that Nauska posed a danger to their child.

Judge Weeks imposed the same sentence on both defendants: 10 years' imprisonment with 4 years suspended (6 years to serve). The judge recognized that Willis's prior criminal record was worse, but he concluded that Nauska should receive an equal sentence because she was the one who assaulted the baby.

On appeal, both Willis and Nauska contend that 6 years to serve is excessive. But in State v. Jackson, we concluded that a first felony offender convicted of a class B felony could receive up to 6 years to serve if the offense was "exceptionally aggravated"— which we defined as a case involving significant statutory aggravating factors.[13] Willis's and Nauska's cases each involve three undisputed aggravating factors. Judge Weeks could properly conclude that these three aggravating factors were significant enough to call for sentences within the Jackson bench-

---

**10.** See S.R.D. v. State, 820 P.2d 1088, 1095–96 (Alaska App.1991); Reischman v. State, 746 P.2d 912, 915–16 (Alaska App.1987).

**11.** See Bowell v. State, 728 P.2d 1220, 1224 (Alaska App.1986); Reynolds v. State, 664 P.2d 621, 627–28 (Alaska App.1983); see also S.R.D. v. State, 820 P.2d 1088, 1096 (Alaska App.1991)

(acknowledging this rule of harmless error, but nonetheless concluding that the error was not harmless under the facts of the case).

**12.** See AS 11.41.210(b); AS 12.55.125(d).

**13.** 776 P.2d at 326.

mark range for exceptionally aggravated offenses. We therefore hold that Willis's and Nauska's sentences of 6 years to serve are not clearly mistaken.[14]

*Conclusion*

The judgements of the superior court are AFFIRMED.

---

**14.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).