NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROBIN LEE SICKEL,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11393
Trial Court No. 3KN-11-48 CR

O P I N I O N

No. 2480 — December 4, 2015

Appeal from the District Court, Third Judicial District, Kenai, Sharon A.S. Illsley, Judge.

Appearances: David D. Reineke, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Samuel D. Scott, Assistant District Attorney, Kenai, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER.

Robin Lee Sickel and her romantic partner, Jeff Waldroupe, owned three horses. They kept these horses on land owned by Waldroupe's father. In mid-December 2010, these horses were found to be starving and without shelter. The only food and water available to them was frozen solid. One of the horses was more than 200 lbs

underweight; it had collapsed and had lain there so long that its head and the side of its body were frozen to the ground. The horse had to be euthanized.

Sickel was convicted of cruelty to animals under AS 11.61.140(a). This statute declares that it is a crime if a person, "with criminal negligence[,] fails to care for an animal" and this failure to provide care leads to the animal's death or causes the animal severe physical pain or prolonged suffering. AS 11.61.140(a)(2).

Sickel now appeals her conviction. She points out that, as a legal matter, a person who fails to prevent a harm does not act "with criminal negligence" unless the person has an applicable duty of care — a legal duty to try to prevent the specified harm.[1]

The statute at issue in this case, AS 11.61.140(a), does not define which persons have a duty to care for particular animals. The statute simply declares that any person who violates this duty (acting with at least criminal negligence) is guilty of a crime if their breach of duty leads to the animal's death or causes the animal severe physical pain or prolonged suffering. Because the statute fails to define who bears a duty to care for animals, Sickel argues that the statute is unconstitutionally vague and that her conviction for cruelty to animals is therefore unlawful.

It is true that the cruelty to animals statute fails to specify which persons have a duty to care for particular animals. But we are authorized to look to the common law to remedy this omission. As we explain in this opinion, we hold that the statute applies to all persons who have undertaken responsibility for the care of an animal — either because they are the owner of the animal, or because they have agreed to kennel

---

[1] *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), pp. 659-662; Wayne R. LaFave, *Substantive Criminal Law* (2nd edition 2003), § 6.2(a), Vol. 1, pp. 436-443.

or board the animal, or because they have otherwise assumed responsibility for the animal's care.

And even though AS 11.61.140(a)(2) is silent regarding this principle, the parties recognized that this principle controlled the outcome of Sickel's case: they actively litigated whether Sickel had undertaken personal responsibility for the care of the horses, and their final arguments to the jury emphasized that this question was dispositive of Sickel's guilt or innocence. We therefore affirm Sickel's conviction.

*The scope of the duty of care under AS 11.61.140(a)(2)*

Sickel was charged with violating subsection (a)(2) of the cruelty to animals statute. This clause of the statute applies to a person who "fails to care for an animal". In other words, the *actus reus* of this crime is defined as an omission — a failure to act.

And as we explained earlier, the law does not punish a person's failure to act unless that failure to act constitutes a breach of that person's legal duty. *See* AS 11.81.900(b)(43) (defining "omission"). And normally, a person has no duty to take affirmative action to prevent a crime or to protect others from harm. [2] But the common law recognizes several instances in which one person's *relationship* to another person creates a duty of protection or care. Thus, under the common law, parents have a duty to protect their minor children, ship captains must come to the aid of their crew and their passengers, and jailors must protect the inmates in their custody. In general, see Wayne R. LaFave, *Substantive Criminal Law* (2nd edition 2003), § 6.2(a)(1), Vol. 1, pp. 437-38.

---

[2] *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), pp. 659-662; Wayne R. LaFave, *Substantive Criminal Law* (2nd edition 2003), § 6.2(a), Vol. 1, pp. 436-443.

The common law also recognizes that a duty of care can arise by contract or agreement, or by any other voluntary assumption of care. Thus, a person employed as a lifeguard at a beach or swimming pool assumes a duty of care toward the swimmers, and a person employed as a crossing guard at a school has a duty of care toward the students. In general, see *LaFave*, § 6.2(a)(3), Vol. 1, pp. 439-440. And if someone voluntarily assumes responsibility for a helpless person (even in the absence of compensation or formal agreement), this likewise gives rise to a duty to protect the helpless person from further harm. *LaFave*, § 6.2(a)(4), Vol. 1, p. 440.

In past Alaska cases, these common-law principles of responsibility have been applied to define the scope of criminal statutes — even when those statutes do not expressly speak of liability based on a failure to act. In both *Willis v. State*, 57 P.3d 688, 693-97 (Alaska App. 2002), and *Michael v. State*, 767 P.2d 193, 197-98 (Alaska App. 1988),[3] this Court held that a parent can properly be convicted of assault for failing to take reasonable steps to protect their child when they know that the child is in danger of being assaulted by the other parent.

Here, we are dealing with a statute that expressly defines the prohibited conduct as a failure to act. But a failure to act can not be punished unless it constitutes a breach of duty. To define the scope of the applicable duty, we conclude that we should turn to the common-law principles that we have been discussing.

The underlying aim of AS 11.61.140(a)(2) is to protect animals from serious neglect by the people who have assumed responsibility for their care. Typically, these people will be the animals' owners. But there will be times when other people assume responsibility for the care of an animal, either in conjunction with the owners or in lieu of the owners. Thus, the real question is not to identify the persons who have

---

[3]   *Reversed on other grounds*, 805 P.2d 371 (Alaska 1991).

legal ownership of the animal, but rather the persons who have taken on the duty of caring for them.

This is borne out by the corresponding law of other jurisdictions. For example, both California and Rhode Island define the duty as falling on any person "having the charge or custody of any animal, either as owner or otherwise". [4] Texas law declares that the duty of care applies to "[any] animal in the person's custody". [5]

While the owners of animals may often be the ones who are in charge of providing their daily care, this is not always true. Thus, in *State v. Yorczyk*, 356 A.2d 169, 170 (Conn. 1974), the court held that it was reversible error to instruct the jury that the owner of an animal is criminally liable for its mistreatment or neglect, even when the owner did not have charge and custody of the animal and did not know that it was being mistreated or neglected. See also *Muhlhauser v. State*, 1900 WL 1185, *5 (Ohio 1900), where the Ohio Supreme Court held that it was reversible error to prohibit the owner from introducing evidence that the animals were in someone else's custody, and that the owner had no reasonable notice that the animals lacked sufficient food or water, or that they were otherwise being mistreated.

We therefore hold that AS 11.61.140(a)(2) applies only to people who have assumed responsibility for the care of an animal, either as an owner or otherwise.

---

[4]   California Penal Code § 597(b); Rhode Island General Laws § 4-1-2(a).

[5]   Texas Penal Code § 42.09.

*Application of this law to Sickel's case*

The trial judge in Sickel's case did not instruct the jury that the cruelty to animals statute was limited in this way. The judge instructed the jury that the State had to prove that Sickel failed to care for the horses, and that she acted "with criminal negligence" in failing to care for the horses, but the judge never told the jury directly that there was no "criminal negligence" unless the State proved that Sickel had a duty to care for the horses.

However, we have repeatedly held that flaws in jury instructions can be cured by the arguments of the parties.[6] We have examined the final arguments of the parties in Sickel's case, and we are convinced (based on those arguments) that the jurors understood that Sickel could not be convicted of cruelty to animals unless she had assumed responsibility for the care of the horses.

In the early portion of the prosecutor's summation, the prosecutor clarified that "ownership" of the horses was not the issue — that the issue was whether Sickel had assumed responsibility for the care of the horses, either because she was one of the legal owners or because she otherwise assumed responsibility for the care of the horses by "exercis[ing] essentially all the attributes, all the characteristics of ownership".

The prosecutor emphasized the evidence that the horses were purchased primarily for Sickel's benefit, and that Sickel fed the horses on a regular basis and provided their other necessities. The prosecutor also emphasized that it was Sickel who made the decision to call the veterinarian, and who made the decision whether the horse would be euthanized by injection or by shooting. Toward the end of his summation, the prosecutor told the jurors:

---

[6] *See, e.g., Riley v. State*, 60 P.3d 204, 208 (Alaska App. 2002); *O'Brannon v. State*, 812 P.2d 222, 229 (Alaska App. 1991).

> [These] animals are in a unique situation. They're in a pen; ... they can't leave. So they're essentially totally reliant on the people caring for them, totally at their mercy. ... These are essentially helpless creatures, completely relying on ... two people: it's Robin [Sickel] and Jeff [Waldroupe] ... who've frankly failed in that obligation to care for those animals.

The defense attorney's primary argument to the jury was that Sickel did not act negligently — that she could not reasonably have known that the horse was in such a dire condition. Sickel's attorney did not dispute that Sickel assumed responsibility for the care of the horses. Rather, the defense attorney suggested that Sickel should be acquitted because Jeff Waldroupe and Jeff Waldroupe's father *also* assumed responsibility for the care of the horses, but the State did not charge these two men with cruelty to animals.

Given the attorneys' arguments, the jurors would have understood that they could not convict Sickel unless they found that Sickel had undertaken a responsibility to care for the horses.

In her brief to this Court, Sickel contends that the prosecutor did not merely argue that Sickel could be convicted because she assumed responsibility for the care of the horses. Rather, according to Sickel, the prosecutor suggested that Sickel could be convicted because she failed to meet a *moral* responsibility toward the horses.

The last three paragraphs of the prosecutor's rebuttal summation are arguably ambiguous on this point. When read out of context, the prosecutor's remarks could potentially be interpreted as inviting the jury to convict Sickel because she had the last clear chance to alleviate the horses' condition, regardless of whether she had assumed responsibility for the horses' care.

Specifically, the prosecutor noted that Sickel knew more about horses than Jeff Waldroupe and the other people who were involved in caring for the horses, and that Sickel was the person who was tending the horses during the last three days before the discovery of the collapsed horse (the horse that had to be euthanized).

But when these remarks are read in context, they are merely extensions of the prosecutor's primary argument that Sickel had assumed responsibility for the care of the horses.  In particular, when the prosecutor remarked that Sickel had the last opportunity to do something to save the dying horse, this was based on the prosecutor's assertion that Sickel had essentially assumed *sole* responsibility for the care of the horses during the last three days.

Viewing the prosecutor's argument as a whole, the jurors would have understood that the prosecutor was asking them to find legal responsibility (*i.e.*, Sickel's assumption of a duty of care), not moral responsibility.


*Conclusion*


We hold that subsection (a)(2) of the cruelty to animals statute requires proof that the defendant assumed responsibility for the care of an animal, either as an owner or otherwise.

Even though Sickel's jury was not instructed on this element of the offense, we conclude that this flaw was cured by the arguments of the parties.

Accordingly, the judgement of the district court is AFFIRMED.